# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 5, 2012

Lyle W. Cayce
Clerk

No. 10-30879

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JONATHAN BOLAR

Defendant - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans Division
No. 2:09-CR-138-1

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Appellant Jonathan Bolar appeals his conviction and sentence in district court for extortion, 18 U.S.C. § 1951, wire fraud, 18 U.S.C. § 1343, failure to file tax returns, 26 U.S.C. § 7203, and structuring financial transactions to evade reporting requirements, 31 U.S.C. § 5342. The appellant argues that the district court clearly erred in denying his *Batson*[1] challenge, that the record is devoid of evidence supporting the extortion and wire fraud convictions, and that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

No. 10-30879

district court plainly erred in calculating the sentencing guidelines range and in imposing a 53-month upward variance.  For the following reasons, we AFFIRM the conviction and sentence.[2]

## I.

## A.

Jonathan Bolar (Bolar), a former Gretna, Louisiana city councilman, was indicted on four counts of extortion, two counts of wire fraud, four counts of failure to file a tax return, and three counts of structuring financial transactions to evade reporting requirements.  Bolar was an elected councilman for Gretna from 2001 to 2010, during which time he was also the owner and operator of J.C. Bolar & Sons, Inc., 636 Franklin L.L.C., and Bolar Contractors, L.L.C.

The government presented testimony from several victims detailing a pattern of extortion and fraud.  Local Gretna businessman Frank Warburton testified that Bolar required him to make a $5000 campaign contribution in order to obtain a permit to renovate an apartment complex.  Bolar also required Warburton to use Bolar's construction firm for the renovation, at a contracted price of $92,500.  Warburton paid Bolar $88,000 toward the renovation before denying a final payment when Bolar failed to complete the work.  Bolar threatened to pull the building permit if Warburton did not make the final payment.  A Gretna city inspector then informed Warburton that the windows, air conditioners, and water heaters installed by Bolar did not conform to the city code.  Warburton paid approximately $18,000 to have those issues fixed.

Another witness, Jim Walden, described a similar encounter with Bolar. Walden was a businessman from Kentucky who sought to open a new multi-state restaurant franchise in Bolar's district.  Despite having a building permit,

---

[2] The appellant has moved to proceed pro se on appeal.  His counsel has thoroughly briefed the issues before the court, and this case is being decided without argument.  The motion is denied.

No. 10-30879

Walden was told that he needed Bolar's approval to begin the project. Bolar and Walden met at the construction site, where Bolar told Walden that he resented the fact that Walden had not approached him before beginning the project. Bolar told Walden to help reduce his campaign debt by paying him $2,500 in cash. When Walden agreed to pay $2,200, Bolar told him that his "problems [would] go away."

Quan Trinh, a Gretna business owner, testified that when he sought to reopen a laundromat that had been shuttered, he was told that he would need to have the property re-zoned. Bolar came to Trinh's restaurant, introduced himself as the councilman for the district, and told him that he would need $500 for each of the five Gretna councilmen to guarantee re-zoning. Trinh refused to pay, and the re-zoning application was denied. The jury heard a recording of the city council meeting in which Bolar argued against the proposed re-zoning.

Trinise Forges, a bus driver and life-long friend of Bolar's, testified that when she was trying to rebuild her home after Hurricane Katrina, Bolar convinced her to write him a check for $12,500. Bolar told Forges that he would provide wood and cabinetry in exchange for the money, but had Forges write "consultation" in the memo line of the check. Bolar cashed the check a few days later and denied any responsibility for supplying the wood. He claimed that the purpose of the check was to make him a consultant on the construction. Bolar did no work on the home and supplied no materials. Forges was forced to buy the wood from another source for $13,000.

Later, as Forges's cousin prepared to pour the slab for the home, Bolar demanded an additional $2,500 to obtain a zoning variance because the slab was too close to the property line. Concerned that she would lose the $9,000 she had already spent on concrete if she was unable to go forward with building, Forges made the $2,500 payment. She later learned that the actual cost of the variance was $25.00.

No. 10-30879

When Bolar failed to obtain the variance and failed to return Forges's money, Forges reported him to the district attorney. After hearing that Forges had reported him, Bolar responded that the district attorney would "tell [her] the position [Bolar] had in Gretna." Forges, unhappy with the pace of the district attorney's investigation, then reported Bolar to the Federal Bureau of Investigation, the Gretna police, and local media. Bolar sued Forges for slander.

Testimony was also presented showing that Bolar on two separate occasions purported to sell a piece of property that he did not own. A member of a local church testified that Bolar represented himself as the owner of a piece of land that the church was interested in buying. The witness and Bolar executed a purchase agreement, and the church gave Bolar $3,750 in earnest money. Bolar cashed the check the following day. The church subsequently learned that Bolar was not the owner of the property. Bolar never returned the $3,750.

Betty Williams, another friend of Bolar's, testified that she and her husband contacted Bolar about buying the same piece of land. They were interested in building a home for their daughter so that she could help with the care of Mr. Williams, who was very ill. Bolar did not inform them that he had sold the property a year earlier. Bolar and the Williamses executed a purchase agreement for the property, with Bolar requiring a down payment of $11,250. The Williamses gave him a check, which he cashed the next day. At Bolar's request, they later gave him two more checks: one for $1,600 to survey the propery, and one for $3,550 to resubdivide the lot. Bolar did not survey the property or resubdivide. The Williamses eventually obtained a judgment against Bolar, but had not yet recovered the money as of the date of his criminal trial.

Finally, another friend of Bolar's, Adonis Favorite, testified that she committed perjury for Bolar before the grand jury at his urging. She falsely testified before the grand jury that she overheard him say to a constituent that

No. 10-30879

he would not accept money to obtain a variance for the constituent. After giving that testimony, Favorite met with Bolar, who frisked her to ensure that she was not wearing a wire. Later, before the start of the trial, Favorite met with the federal agents handling the case against Bolar and confessed that she had lied at Bolar's request.

B.

Bolar was indicted on four counts of extortion, two counts of wire fraud, four counts of failure to file a tax return, and three counts of structuring financial transactions to evade reporting requirements. During voir dire, Bolar, who is African American, objected on the ground that the government had used peremptory strikes to bar jurors on the basis of race. The district court noted that the 12-person jury included four African Americans and that the government's witness list included African Americans. Bolar argued that a prima facie case of racial discrimination was made because the government exercised five of its seven challenges on African American members of the jury pool.

The district court requested that the government provide its reasons for challenging the potential African American jurors. The government asserted that it struck two jurors, one African American and one Caucasian, because of their youth. The government further asserted that the African American juror was not only young but worked with medical records, and that the prosecution had "had a tremendous amount of trouble" with medical records personnel failing to respond to subpoenas for documents. The prosecutor asserted that it struck another potential African American juror because he had fallen asleep during voir dire, and had seen news coverage of the case but had "no problem" with the defendant "whatsoever." As to the remaining jurors, the government asserted that it struck one because her son was in jail, one because the prosecutor had successfully pursued a cause against the potential juror's cousin

5

No. 10-30879

for fraud, and one because he worked for a trucking company and the defendant owned a trucking company.

The court concluded that the government's race-neutral explanations were not pretextual, and determined that the defense failed to carry its burden of proving purposeful discrimination.

At the close of the government's case, Bolar moved for a judgment of acquittal, which was denied. He did not renew the motion following the conclusion of his case or following the verdict. The jury unanimously convicted him on all counts.

In calculating the sentencing guidelines range, the probation officer added offense levels based on his finding that Bolar had received more than one bribe, that Bolar had extorted or attempted to extort $122,000 from various victims, that Bolar was a public official, and that Bolar obstructed justice. With a total offense level of 32 and criminal history category of 1, the recommended guidelines range was 121 to 151 months.

The government moved for an upward variance. The district court agreed that an upward variance was appropriate, and sentenced Bolar to a total of 204 months in prison, three years of supervised release, $134,732 in restitution to the IRS, $39,350 in restitution, and $1000 in special assessments. The court provided written reasoning for the upward variance, emphasizing the "gravity of the multiple obstructions" of justice, Bolar's "persistent efforts to obstruct the factfinding process," and his "blatant and pervasive" use of extortion that "undermine[d] and debilitate[d] the public's confidence in their elected officials."

II.

A.

Bolar challenges the district court's denial of his *Batson* claim, arguing that the government's explanations for striking five African American jurors were pretextual. *Batson v. Kentucky*, 476 U.S. 79 (1986), established a three-

6

## No. 10-30879

step process for evaluation of a defendant's claim that a prosecutor used peremptory strikes in a racially discriminatory manner. *Moody v. Quarterman*, 476 F.3d 269, 266 (5th Cir. 2007). First, the challenger must make a prima facie showing of discriminatory jury selection. *Id.* The burden then shifts to the party accused of discrimination to provide a race-neutral explanation for its strikes. *Id.* The explanation "need not be persuasive, nor even plausible, but only race-neutral and honest." *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001). Finally, the trial court "must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez v. New York*, 500 U.S. 352, 359 (1991). The trial court's findings on that point "represents a finding of fact of the sort accorded great deference on appeal," *id.* at 364, and are reviewed for clear error. *United States v. Williamson*, 533 F.3d 269, 274 (5th Cir. 2008).

Bolar asserts that five of six jurors struck by the government were African American, but fails to establish a discriminatory motive. The government declined to exercise one of its peremptory challenges, and four of the sitting jurors were African American. Bolar's arguments that the government's race-neutral explanations were mere pretext are unavailing. The reasons provided by the government were not implausible or fantastic, and the district court made the determination that they were credible after observing the prosecutor's and the jurors' demeanor. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). The district court's denial of Bolar's *Batson* challenge was not clear error.

### B.

Bolar argues that the evidence presented at trial was insufficient to support a conviction on four counts of extortion under the Hobbs Act, 18 U.S.C. § 1951(a). To prove extortion, the government was required to show that Bolar "in any way or degree obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by robbery or extortion."

No. 10-30879

§ 1951(a). Extortion can be proved by showing that the defendant was a public official who "acted under color of official right" to obtain another's property with his consent, or that he attempted to do so. § 1951(a), (b)(2); *United States v. Wright*, 797 F.2d 245, 250 (5th Cir. 1986). That element is met if the government shows that the defendant "has taken a fee, unlawfully, under color of his public office, in return for performance or nonperformance of an official act." *Wright* at 250.

Bolar did not renew his motion for a judgment of acquittal following the close of the evidence, therefore review is for plain error. *United States v. Delgado*, 679 F.3d 320, 328–29 (5th Cir. 2012) (en banc). Bolar must show (1) an error or defect, (2) that was clear or obvious, and that (3) affected his substantial rights. *Id.* at 329. If he meets each of those prongs, this court has the discretion to correct the error if it concludes that the error was a "manifest miscarriage of justice," i.e., it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 328–29.

As discussed above, the record is replete with evidence showing that Bolar acted under color of his position as a Gretna city councilman to obtain or attempt to obtain money. He repeatedly identified himself as a city councilman and explicitly referred to his power as a government official in his conversations with each of the four victims.

Bolar asserts that the record is devoid of evidence that his actions affected interstate commerce. In order to satisfy the interstate commerce requirement, the government must show either that (1) the victim "is directly and customarily engaged in interstate commerce" and the extortion depletes his assets; (2) the extortion causes or creates the likelihood that the victim will deplete the assets of an entity engaged in interstate commerce, or (3) "the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce." *United States v. Collins*, 40 F.3d 95, 100 (5th

No. 10-30879

Cir. 1994). The effect on interstate commerce can be direct or indirect, need only be de minimis, and is determined on a case-by-case basis. *See United States v. Robinson*, 119 F.3d 1205, 1211 (5th Cir. 1997); *Collins*, 40 F.3d at 99; *United States v. Wright*, 797 F.2d 245, 248 (5th Cir. 1986).

The government contends that Bolar stipulated the interstate commerce element. Bolar and the government agreed to the following stipulation:

> that the following financial institutions, to-wit: Capital One, formerly Hibernia Bank; Dryades Savings Bank; Omni Bank; Whitney Bank; Regions Bank; J.P. Morgan Chase and First Bank & Trust are financial institutions as defined in Title 31, United States Code, Section 5312(A)(2), and that these financial institutions were insured from 2000 to 2008 by the Federal Deposit Insurance Corporation or FDIC, and that those financial institutions engaged in financial transactions and commerce affecting interstate commerce as contemplated by Title 18, United States Code, Section 951, the Hobbs Act violation statute.

The record strongly suggests that the government, the defense, and the court were of the belief that the stipulation satisfied the commerce element. The district court informed the jury of the stipulation and instructed it that there was "no dispute between the parties" with respect to the interstate commerce element for the four extortion counts. Bolar agreed to the stipulation and did not object to the jury instruction.

The stipulation, however, does not necessarily satisfy the interstate commerce element. Bolar did not extort any of the financial institutions listed in the stipulation, and none of them can be considered a "victim" under the statute. Further consideration of the record is necessary to determine whether there was sufficient evidence to support the interstate commerce element.

The record contains evidence supporting a finding that Bolar's actions as to Jim Walden, Frank Warburton, and Quan Trinh affected interstate commerce. Bolar's threats to deny approval of the first restaurant in what would be a multi-

No. 10-30879

state franchise by Jim Walden affected interstate commerce by obstructing and delaying the project. Bolar's obstruction of Warburton's apartment renovation project necessarily affected interstate commerce, because apartment rental affects interstate commerce. *Russell v. United States*, 471 U.S. 858, 862 (1985). Bolar's preventing Trinh from reopening his laundromat because Trinh refused to pay Bolar constituted the type of disruption that, "if repeated . . . across the nation, would amount to a substantial effect upon interstate commerce." *United States v. Robinson*, 119 F.3d 1205, 1211 (5th Cir. 1997).

The evidence is not as clear that Bolar's demand from Trinise Forges of $2,500 to obtain a variance for a concrete slab affected interstate commerce. No evidence was presented that Forges was directly and customarily engaged in interstate commerce, or that the extortion affected an entity engaged in interstate commerce.

Reversal is only appropriate, though, where there is a "manifest miscarriage of justice." *Delgado* at 331. Bolar agreed at trial to a stipulation that he, the government, and the court intended would satisfy the interstate commerce element of the extortion counts. The district court instructed the jury that there was "no dispute between the parties" with respect to the interstate commerce element, and Bolar did not object to that instruction. After agreeing that the interstate commerce element had been satisfied, the defendant cannot now argue that the government's failure to produce evidence as to that element constituted a manifest miscarriage of justice. *See United States v. Branch*, 46 F.3d 440, 442 (5th Cir. 1995) (holding that a defendant who agreed to a stipulation covering an element of the offense could not "now claim that the government failed to offer evidence on an element to which he confessed"). The defendant has not shown that the extortion convictions were a manifest miscarriage of justice.

No. 10-30879

Bolar also argues that there was insufficient evidence to support the wire fraud conviction. In order to show that Bolar committed wire fraud, the government was required to show that Bolar formed a scheme to defraud another of money by false pretenses and that he used an interstate wire communication to further the scheme. 18 U.S.C. § 1343. Bolar asserts that he had no intent to defraud, and was merely "overextended" in his private business dealings. However, the evidence presented at trial clearly shows that Bolar intentionally schemed to sell a property that he did not own, both to the Franklin Street Church of Christ and to the Williams family. He stipulated that the checks he cashed from the Church and the Williamses caused interstate wire transfers. The wire fraud conviction was not a manifest miscarriage of justice.

Finally, Bolar asserts that the evidence was insufficient to show that he intentionally structured banking transactions to avoid reporting requirements. It is a crime for an individual to structure financial transactions for the purpose of evading the requirement that a financial institution file a currency transaction report (CTR) with the government for any cash transaction that exceeds $10,000. 18 U.S.C. § 5324(a)(3).

Debra Murden, a bank teller, testified that on December 13, 2005, Bolar made a $22,000 cash deposit, at which time she informed him of the bank's reporting obligation. Following that deposit, Bolar avoided making any further deposits over $10,000. A forensic financial analyst provided a detailed accounting of Bolar's cash deposits during the relevant time frame. Between January 8 and January 9 of 2006, Bolar made three cash deposits of exactly $10,000 each. On May 16, 2006, he made four cash deposits totally $16,000 divided among four separate accounts. On consecutive days in March of 2007, Bolar made two cash deposits totaling $15,000. Bolar fails to show that the record is devoid of evidence that he structured his deposits with the intent to evade federal reporting requirements.

11

No. 10-30879

C.

Bolar challenges the district court's calculation of the sentencing guidelines range, as well as the court's variance from the range. This court reviews sentences for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a), applying a two-step process. First, the court ensures that the district court did not commit any significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). If the sentence is procedurally sound, the court considers the substantive reasonabless of the sentence under a deferential abuse of discretion standard. *Id.* Although Bolar objected "to the nonguidelines sentence," he did not specify a basis for his objection. Therefore review is for plain error. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).

According to Bolar, the district court procedurally erred by imposing a four-level public official enhancement. That enhancement applies to any elected public official. *See U.S. Sentencing Guidelines* § 2C1.1(b)(3). As an elected Gretna City councilman, Bolar is a public official. Applying that enhancement was not plain error.

Bolar also challenges the value of the amount used to calculate his guidelines range, arguing that the $84,000 that Warburton paid him should have been excluded. The Guidelines instruct the court to include in the value amount "the value of the payment, the benefit received or to be received in return for the payment, [or] the value of anything obtained or to be obtained by a public official or others acting with a public official . . . ." *Id.* at §2C1.1(b)(2). Bolar fails to show that the inclusion of the $84,000 was plain error.[3]

_____

[3] Review of the guidelines calculation does reveal an error in the extortion value used to determine the guidelines range. The probation officer entered a contract price between Warburton and Bolar of $97,000. According to Warburton's testimony, the contract price was

No. 10-30879

Looking to the second step in the analysis, Bolar argues that the sentence's variance from the guidelines was substantively unreasonable. "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006). This court must "give due deference to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

The district court applied an upward variance from the recommended guidelines range of 121 to 151 months, sentencing Bolar to a total of 204 months in prison, three years of supervised release, $134,732 in restitution to the IRS, $39,350 in restitution, and $1000 in special assessments. The district court provided a lengthy explanation for the variance, noting the "gravity of the multiple obstructions," Bolar's "persistent attempts to undermine and subvert the investigative and judicial process," and that his testimony was "replete with blatant lies." The court stated that Bolar's "use of extortion . . . was blatant and pervasive," and emphasized the "immorality and depravity" of stealing from a church and from his friends.

Bolar has not shown that his sentence fails to account for a particular factor, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment. Bolar engaged in an elaborate extortion and fraud scheme. He stole from the community that elected him, from church members, and from his friends who were in poor health. He convinced a friend to perjure herself before the grand jury. Bolar fails to show that the district court plainly

---

in fact $92,500. That $4,500 difference affected the guidelines calculation. The appellant did not raise that issue on appeal, though, and we are not obliged to raise it *sua sponte*. *See United States v. Thames*, 214 F.3d 608, 612 n.3 (5th Cir 2000) (issues not briefed are waived).

13

No. 10-30879

erred in imposing an upward variance from the recommended guidelines sentence.

### III.

The appellant has failed to show that the district court erred in denying his *Batson* challenge, that the evidence was insufficient to support his convictions, or that the sentence imposed was unreasonable in light of the sentencing guidelines and § 3353 factors.

For the foregoing reasons, we AFFIRM the judgment of the district court.