# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-51031

United States Court of Appeals
Fifth Circuit

**FILED**
June 13, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

BRIAN TERRELL PHEA, also known as Brian Phea,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

A jury convicted Brian Terrell Phea of causing a person under the age of 18 to engage in a commercial sex act in violation of 18 U.S.C. § 1591(a) and aiding and abetting the promotion of prostitution in violation of 18 U.S.C. § 1952(a)(3).  He received concurrent sentences of 312 months and 60 months of imprisonment, respectively.  Phea challenges his conviction under § 1591(a) and his sentence on various grounds.

We affirm.

No. 12-51031

## I

Phea's conviction under § 1591(a) resulted from his involvement in the prostitution of K.R., a fourteen-year-old female. Phea came into contact with her on the social networking website Tagged.com. K.R.'s profile on that website said that she was eighteen years old. Phea says that after engaging in "sexual banter" over the internet, he asked K.R., who lived in Houston, Texas, to travel to and meet him in Amarillo, Texas. He initially sought to buy an airline ticket for her, but she told him that she did not have any identification documents. Phea purchased a Greyhound bus ticket that K.R. used to travel from Houston to Amarillo. In Amarillo, Phea met her at the bus station and took her to his mother's house where he and K.R. had sexual intercourse. Phea then drove K.R. to Odessa, Texas, which was a five-hour trip, and paid for a room at the Quality Inn Hotel that K.R. shared with another woman, who worked as a prostitute for Phea.

Phea bought K.R. new clothes, shoes, and a mobile phone. The phone's number corresponded to a number listed in an advertisement for prostitution services that Phea and another individual had placed on a website called Backpage.com. After K.R. received the phone, she was contacted by men she did not know to inquire about "selling [her] body" and related costs.

K.R. spent four days in Odessa with Phea and women working as prostitutes for Phea. During this time, K.R. quarreled with one of these women, and K.R. told Phea that she did not want to work as a prostitute. In response, Phea beat and tased K.R., rupturing her eardrum. He then instructed her to go with him to a hotel to meet a man from Louisiana who had contacted K.R. earlier to solicit sex. Phea told K.R. how much to charge the man, and later, when the man did not have sufficient funds, instructed her to accept the money he did have. K.R. then had sexual relations with this man.

No. 12-51031

Phea picked her up afterwards and took the money K.R. had received before driving her back to the Quality Inn.

Phea was charged with violating 18 U.S.C. §§ 1591(a) and 1952(a)(3). A jury found Phea guilty. It also made a special finding that Phea had committed the offense of sex trafficking under § 1591(a) by force, threats of force, fraud, or coercion. At sentencing, Phea objected to the application of a two-level enhancement for the use of a computer. The district court overruled the objection and sentenced Phea to a term of 312 months of imprisonment, to run concurrently with his sentence of 60 months for his convictions for aiding and abetting the promotion of prostitution under § 1952(a)(3). Phea now appeals his conviction and sentence under § 1591(a).

## II

Phea maintains that he did not know and had no reason to know that K.R. was less than eighteen years of age. Her online identifying information when he communicated with her through Tagged.com indicated that she was eighteen years old; when she was arrested by police after leaving Amarillo with her boyfriend, she told the officers that she was nineteen; and she never told Phea, any of his associates, or anyone at the Amarillo hotels she frequented that she was under the age of eighteen. Phea challenges the sufficiency of the evidence and the charge to the jury regarding his culpable mental state in this regard.

## A

Phea asserts that he could be convicted under § 1591(a) only if he either knew K.R. was under the age of eighteen or acted in reckless disregard of that fact. He contends that the evidence was insufficient to establish either of these mental states. Phea moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. When a defendant moves for a judgment of acquittal at the close of the government's case and after the defense rested, we review

3

No. 12-51031

his claims regarding the sufficiency of the evidence de novo.[1]  "All evidence is reviewed in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established . . . guilt beyond a reasonable doubt."[2]  We conclude that there is evidence from which a rational trier of fact could have found beyond a reasonable doubt that Phea caused K.R. to engage in a commercial sex act in reckless disregard of the fact that she had not attained the age of eighteen.  There is also evidence that would support a finding that Phea had a reasonable opportunity to observe K.R.

It is undisputed that Phea knew that K.R. did not have identification that was sufficient to allow her to obtain a ticket on an airline.  While this evidence, standing alone, might not support the jury's verdict, it is evidence that the jury may properly consider.  Her lack of identification is at least some evidence that would tend to put a person on inquiry that K.R. may not have been eighteen years of age.  Most importantly, we cannot ignore the undisputed evidence that Phea spent a significant amount of time with K.R. and had sexual intercourse with her.  K.R. testified at trial.  The jury was entitled to evaluate K.R.'s appearance in deciding whether Phea acted in reckless disregard of the fact that she was fourteen, not eighteen, years old.  There is no evidence in the trial record that K.R. appeared to be four or more years older than her age of fourteen.  The jury was entitled to draw its own conclusions, from its own direct observations, regarding K.R.'s appearance and behavior, unless the record reflects that no reasonable person could have suspected that K.R. was under the age of eighteen.  There is no such evidence in the record before us.

---

[1] *United States v. Harris*, 666 F.3d 905, 907 (5th Cir. 2012) (citing *United States v. Penaloza-Duarte*, 473 F.3d 575, 579 (5th Cir. 2006)).

[2] *Id.*

No. 12-51031

Phea asserts that the Government failed to adduce any expert testimony or to employ a "heuristic method such as the Tanner Scale of Human Development for Females." We have found no authority, and Phea cites none, that holds expert testimony is necessary to establish a fact question for a jury as to a victim's age under the circumstance of a case such as this. Phea also points to two exhibits in the record as evidence that K.R. had physical attributes that made her appear to be at least eighteen years of age. One of these exhibits is a pre-printed form showing the bare outline of a female that was used by a nurse to make notes when she examined K.R. for injuries. It is not a depiction of K.R. or a representation that K.R.'s physical appearance was similar to that of the figure's outline. In any event, females under the age of eighteen have physical attributes similar to those of the very basic, almost crudely drawn, female outline appearing on this pre-printed form. The other exhibit on which Phea relies is a photograph of a small area of K.R.'s chest. That photo is not necessarily indicative of an age of eighteen. It indicates only that K.R. appeared to be post-pubescent.

Because the jury saw and heard K.R. at trial and was in the best position to determine whether Phea knew, or acted in reckless disregard, of the fact that K.R. was less than eighteen years old, there is sufficient evidence to support the conviction.

**B**

Phea asserts that the charge to the jury was erroneous because it permitted the jury to reach a guilty verdict solely on the basis that Phea had a reasonable opportunity to observe K.R. He argues that the district court submitted a strict liability theory in this regard. He further contends that the Government must prove both that Phea had a reasonable opportunity to observe K.R. *and* that he recklessly disregarded her age.

No. 12-51031

As an initial matter, we disagree with Phea's construction of § 1591(a) in at least one respect. A conviction may be obtained against a defendant who recklessly disregards a victim's age even if the defendant did not have a reasonable opportunity to observe the victim. Facts other than the victim's appearance or behavior may support a finding of reckless disregard of the victim's age, such as information from the victim, or others, or documentation that would cause a reasonable person to question whether the victim was actually eighteen years old. Circumstances of which a defendant was aware, such as the victim's grade level in school, or activities in which the victim engaged, could also constitute the basis for a finding of reckless disregard.

However, we agree with Phea that the charge did not instruct the jury that it could find, as an alternative basis for conviction, that Phea acted in reckless disregard of the fact that K.R. had not attained the age of eighteen. The jury was instructed as follows regarding K.R.'s age:

**COUNT ONE:**

SEX TRAFFICKING OF CHILDREN BY FORCE, FRAUD, OR COERCION

Title 18, United States Code, Section 1591 (a), makes it a federal crime or offense for anyone to affect interstate commerce by causing a person under the age of 18 to engage in a commercial sex act.

The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

*First*: That on or about March 16, 2012, in the Western District of Texas and the Northern District of Texas, the Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person who had not attained the age of eighteen (18) years;

6

No. 12-51031

*Second*: That the Defendant did so knowing or in reckless disregard of the fact that the person would be caused to engage in a commercial sex act; and

*Third*: That the Defendant's acts were in or affected interstate commerce.

. . . .

Knowledge of the Age of the Juvenile

If the Government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe the person recruited, enticed, harbored, transported, provided, obtained, or maintained, then the Government does not have to prove that the defendant knew that the person had not attained the age of eighteen (18) years.

The only instruction regarding reckless disregard pertained to "reckless disregard of the fact that the person would be caused to engage in a commercial sex act." The jury was instructed in the section of the charge captioned "Knowledge of the Age of the Juvenile" that the Government did not have to prove that Phea "knew" K.R. had not attained the age of eighteen if there is proof beyond a reasonable doubt that Phea had a reasonable opportunity to observe K.R. The jury therefore could have convicted Phea by finding only that he had a reasonable opportunity to observe K.R. It was not required to find that Phea knew she had not attained the age of eighteen or that Phea acted in reckless disregard of the fact that she had not attained that age.

Congress is not categorically precluded from imposing strict liability.[3] Although courts take particular care "to avoid construing a statute to dispense with *mens rea* where doing so would criminalize a broad range of apparently innocent conduct,"[4] that is not the situation we face here. The trafficking of a

---

[3] *See United States v. Garrett*, 984 F.2d 1402, 1409 (5th Cir. 1993) ("The Congress is fully capable of creating strict liability crimes when it is their intent to do so.").

[4] *Amouzadeh v. Winfrey*, 467 F.3d 451, 457 (5th Cir. 2006) (emphasis in original).

person—of any age—in interstate commerce for the purpose of prostitution is illegal,[5] and is thus not within the range of "apparently innocent conduct."[6] Additionally, a number of Courts of Appeals have upheld the application of strict liability with respect to a minor's age in offenses under 18 U.S.C. § 2423(a), which prohibits the transportation of minors with the intent to engage in criminal sexual activity.[7]  The provision under which Phea's conviction was obtained could arguably be characterized as "a public welfare offense,"[8] and the Supreme Court has explained that "a public welfare offense [is] traditionally excepted from the background principle favoring scienter."[9]

Phea notes in his briefing that "strict liability generally raises due process concerns with respect to criminal statutes," but Phea does not actually contend that the statute is unconstitutional.  He has not raised or briefed a constitutional challenge in this court and did not do so in the district court.

The Government contends that the jury charge was a correct embodiment of the law and urges us to agree with the Second Circuit,[10] which

---

[5] *See* 18 U.S.C. § 2421 (prohibiting the transport in interstate or foreign commerce of any individual with the intent that the person engage in prostitution).

[6] *See United States v. Daniels*, 653 F.3d 399, 410 (6th Cir. 2011) (explaining that because "a defendant commits a crime any time he transport an individual for the purpose of prostitution . . . age . . . is not a factor that distinguishes criminal behavior from innocent conduct.") (internal quotation marks omitted); *United States v. Griffith*, 284 F.3d 338, 351 (2d Cir. 2002) ("[A] defendant is already on notice that he is committing a crime when he transports an individual of any age in interstate commerce for the purpose of prostitution.").

[7] *See, e.g.*, *United States v. Tavares*, 705 F.3d 4, 19-20 (1st Cir. 2013); *Daniels*, 653 F.3d at 410; *United States v. Cox*, 577 F.3d 833, 836-38 (7th Cir. 2009); *United States v. Jones*, 471 F.3d 535, 538-39 (4th Cir. 2006); *Griffith*, 284 F.3d at 350-51; *United States v. Taylor*, 239 F.3d 994, 996 (9th Cir. 2001); *United States v. Hamilton*, 456 F.2d 171, 173 (3d Cir. 1972).

[8] *See generally United States v. X-Citement Video, Inc.*, 513 U.S. 64, 71 (1994).

[9] *Id.* (citing *Morissette v. United States*, 342 U.S. 246, 255 (1952)).

[10] *United States v. Robinson*, 702 F.3d 22 (2d Cir. 2012).

has held that § 1591(c)[11] "imposes strict liability" and "relieve[s] the government's usual burden to prove knowledge or reckless disregard of the victim's underage status under § 1591(a)."[12]   Because Phea did not object to the district court's charge to the jury in the district court, our review is for plain error. [13]   In light of the Second Circuit's decision, and because our court has not addressed the issue, it unnecessary to resolve whether § 1591(a) permits a conviction based solely on a finding that the defendant had a reasonable opportunity to observe the victim.   As the Supreme Court has explained, "a substantive legal question that was unsettled at the time the trial court acted . . . foreclos[es] the possibility that any error could have been 'plain'" unless it becomes settled by the time of appellate review.[14]   Any error in the jury instruction could not have been plain.

## III

An element of § 1591(a) refers to "in or affecting interstate or foreign commerce."[15]   Phea challenges his conviction on several grounds that pertain to the interstate commerce nexus.

## A

Phea argues that the evidence was insufficient to establish an interstate nexus because all of the commerce at issue was intrastate and, if there was an

---

[11] 18 U.S.C. § 1591(c) ("In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years.").

[12] *Robinson*, 702 F.3d at 26.

[13] *United States v. McRae*, 702 F.3d 806, 835 & n.14 (5th Cir. 2012).

[14] *Henderson v. United States*, 133 S. Ct. 1121, 1124-25 (2013); *see also United States v. Broussard*, 669 F.3d 537, 550-51 (5th Cir. 2012) (concluding that any error by the district court could not be plain when this court had never addressed the issue).

[15] 18 U.S.C. § 1591(a)(1).

No. 12-51031

interstate commerce nexus, that the Government failed to prove that he knew of an effect on interstate commerce. This is incorrect. Phea purchased a mobile phone for K.R., and that phone's number was included in an advertisement for prostitution services that Phea and another individual placed on the internet. K.R. was contacted on this phone by men who inquired about the cost of having sexual contact with her. In addition, the man with whom Phea directed K.R. to have sexual intercourse as a prostitute was from Louisiana.

**B**

Phea contends that Congress could not validly regulate purely local activity under the Commerce Clause, arguing that the conduct at issue in his case "falls outside the ambit" of the Supreme Court's decision in *Gonzalez v. Raich*.[16] This issue was not raised in the district court, but in any event, it fails on the merits because there was evidence of an interstate nexus in this case.

**C**

Phea argues that the district court erred in its charge to the jury because it failed to require the Government to prove that Phea knew of the effect his conduct had on interstate commerce. Because Phea did not object to the instruction the district court gave, and therefore did not preserve his challenge regarding the proper interpretation of § 1591(a), our review is for plain error.[17]

The district court instructed the jury that it could find Phea guilty of violating § 1591(a) if it found the following facts were proven beyond a reasonable doubt:

> *First*:      That . . . the Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained

---

[16] 545 U.S. 1, 17 (2005).

[17] *McRae*, 702 F.3d at 835 & n.14.

10

by any means a person who had not attained the age of eighteen (18) years;

*Second*:    That the Defendant did so knowingly or in reckless disregard of the fact that the person would be caused to engage in a commercial sex act; and

*Third*:    That the Defendant's acts were in or affected interstate commerce.

In instructing the jury more specifically as to whether Phea's acts were in or affected interstate commerce, the district court said:

> In determining whether the Defendant's conduct was "in or affected interstate or foreign commerce," you may consider whether the Defendant used means or facilities of interstate commerce, such as telephones, the Internet, or hotels that serviced interstate travelers.

> If you decide that there would be any effect at all on interstate commerce, then that is enough to satisfy this element. The effect can be minimal.

> If the Government proves beyond a reasonable doubt that any of the acts of harboring a person who had not attained the age of 18 years for commercial sex acts affected the flow of money, goods or services in interstate commerce to any degree, you may find that the interstate commerce requirement has been satisfied.[18]

Whether § 1591(a) requires that a defendant know that his conduct is in or affects interstate commerce is an issue of first impression in this circuit. The relevant portion of § 1591 provides,

(a) Whoever knowingly—

> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; . . .

---

[18] R. at 636-37.

No. 12-51031

knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).[19]

Phea argues that the word "knowingly" in § 1591(a) modifies not only the actions "recruits, entices, harbors, transports, provides, obtains, or maintains," but also the clause "in or affecting interstate or foreign commerce." He relies primarily on the Supreme Court's decision in *Flores–Figueroa v. United States*.[20] Phea points to statements in that opinion which say that "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element," and that "[a]s a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime."[21]

In *Flores–Figueroa*, a defendant was convicted of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), which punishes a person who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" during and in relation to the commission of certain enumerated crimes.[22] The defendant conceded that he had used counterfeit documents but argued that the Government could not prove that he knew that the Social Security numbers on those documents were assigned

---

[19] 18 U.S.C. § 1591(a).

[20] 556 U.S. 646 (2009).

[21] *Flores–Figueroa*, 556 U.S. at 650, 652.

[22] *Id.* at 647; *see also* 18 U.S.C. § 1028A(a)(1).

12

to other people.[23]  The Supreme Court reversed the conviction, holding that "knowingly" in the statute's text applied not only to the acts of transferring, possessing, or using the identification without lawful authority, but it also required knowledge that the means of identification belonged to "another person."[24]

The Court's conclusion in *Flores–Figueroa* was based on the text of the statute and that "[a]s a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime."[25]  The court explained, "[i]n ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence."[26]  Absent "special contexts" or "a more detailed explanation of background circumstances that call for [a different] reading," the Court concluded that the adverb modifies the *full* object of the transitive verb, including all of its characteristics (*e.g.*, "of another person").[27]  Because the element "of another person" was a characteristic of the direct object of the transitive verbs in the statute and there was no special context, the Court held that "knowingly" applied to that element as well.[28]

The interstate nexus element of § 1591(a)—"in or affecting interstate or foreign commerce"—is not a part of the direct object of the transitive verbs

---

[23] *Flores–Figueroa*, 556 U.S. at 649.

[24] *Id.* at 648-49.

[25] *Id.* at 650.

[26] *Id.*

[27] *Id.* at 652.

[28] *Id.* at 652, 657.

"recruits, entices, harbors, transports, provides, obtains, or maintains by any means." The direct object in the sentence is "a person"; however, it is not the person who must be in or affecting interstate or foreign commerce. Rather, it is the actions described by the transitive verbs that must occur in, or affect, interstate or foreign commerce. The interstate nexus element is in essence an adverbial phrase modifying the transitive verbs. The Supreme Court's decision in *Flores–Figueroa* does not speak directly to whether an adverb (such as knowingly) that modifies a transitive verb also extends to adverbial phrases that also modify the transitive verb.

At least two other Courts of Appeals have concluded that *Flores-Figueroa* does not compel the application of "knowingly" to the interstate nexus element of § 1591(a).[29] In light of this, along with the lack of precedent on the issue in this circuit, Phea cannot show that the jury charge, in which the district court construed § 1591(a) as not requiring knowledge that the defendant's conduct was in, or affected, interstate commerce, was plainly erroneous.

**D**

Phea asserts that the district court's instruction went beyond the Fifth Circuit's Pattern Jury Instructions on interstate commerce by specifically referencing "telephones, the Internet, or hotels that serviced interstate travelers," and that this influenced the jury's verdict because this was the exact evidence on which the prosecution relied. We note that this circuit has no pattern instruction for § 1591, and the district court's instruction is a verbatim

---

[29] *See United States v. Sawyer*, 733 F.3d 228, 229 (7th Cir. 2013); *United States v. Evans*, 476 F.3d 1176, 1180 n.2 (11th Cir. 2007); *see also United States v. Myers*, 430 F. App'x 812, 816 (11th Cir. 2011) (unpublished) (holding that *Evans* remains good law after *Flores–Figueroa*).

recitation of the Eleventh Circuit's Pattern Jury Instruction for offenses under § 1591(a).[30]

With regard to whether the instruction was incorrect, the relevant inquiry is "whether [the jury instruction was] a correct statement of the law, whether it clearly instruct[ed] jurors, and whether it [was] factually supportable."[31] The district court correctly stated the law that telephones, the Internet, and hotels that service interstate travelers are all means or facilities of interstate commerce sufficient to establish the requisite interstate nexus.[32] The instruction was supported by the facts of the case.

The other challenge to the instruction is that it referred to "acts of harboring a person" generally, rather than specific acts of Phea harboring K.R., and that the instruction incorrectly suggested to the jury that it could convict him if it found that acts of harboring in general affect interstate commerce. In *United States v. Anderson*,[33] we approved an instruction containing identical language.[34] Additionally, specific jury instructions are to be judged not in isolation, "but must be considered in the context of the instructions as a whole and the trial record."[35] Viewing the instruction as a whole, it is clear that the

---

[30] *See* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases), Offense Instruction No. 63 (2010).

[31] *United States v. Montes*, 602 F.3d 381, 386 (5th Cir. 2010) (internal citations omitted).

[32] *See Heart of Atlanta Motel, Inc. v. U.S.*, 379 U.S. 241, 261 (1964) (hotels catering to interstate guests can satisfy the requisite interstate nexus); *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) (holding interstate nexus satisfied because of use of the Internet); *United States v. Marek*, 238 F.3d 310, 318 (5th Cir. 2001) (en banc) (noting that telephones are facilities of interstate commerce that can create "a criminal federal jurisdictional nexus during intrastate use").

[33] 560 F.3d 275 (5th Cir. 2009).

[34] *Anderson*, 560 F.3d at 278-80.

[35] *United States v. Simkanin*, 420 F.3d 397, 406 (5th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).

"acts of harboring a person" mentioned by the district court referred to "the defendant's conduct" discussed in the first paragraph of the instruction and not to acts of harboring in general. The district court did not err in including this language in its instruction.[36]

## IV

Phea asserts that the prosecutor made various improper statements during closing argument. In reviewing claims of improper prosecutorial arguments, "[w]e first analyze whether the prosecutor's remark was legally improper."[37] In closing argument, a prosecutor is limited to "discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence . . . [and] is not permitted to make an appeal to passion or prejudice calculated to inflame the jury."[38] "Improper argument warrants reversal when 'taken as a whole in the context of the entire case, [it] prejudicially affect[ed] substantial rights of the defendant.'"[39] "To make that determination, we assess (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt."[40] Because Phea did not object to the prosecutor's statements in the district court, our review is for plain error.[41]

---

[36] *See United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) ("It is well-settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law.").

[37] *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008).

[38] *United States v. Turner*, 674 F.3d 420, 439 (5th Cir. 2012) (internal quotation marks and citations omitted).

[39] *United States v. Hitt*, 473 F.3d 146, 161 (5th Cir. 2006) (alterations in original) (quoting *United States v. Corona*, 551 F.2d 1386, 1388 (5th Cir. 1977)).

[40] *Turner*, 674 F.3d at 439 (internal quotation marks omitted).

[41] *See, e.g.*, *Hitt*, 473 F.3d at 161.

No. 12-51031

The first statement Phea challenges as improper was the prosecutor's statement that,

> I've got a 19-month-old daughter who wouldn't let me feed her applesauce last night. She's a big girl. She's going to do it herself. But she has a loving environment. She's just trying on her own to do things on her own.

> That's natural.

> This girl didn't really have that. She didn't try to grow up too fast; she didn't have much of a choice. She was kind of thrown into it, wasn't she?

References to the prosecutor's daughter are neither properly admitted evidence nor a reasonable inference from that evidence, and thus the prosecutor's reference was legally improper. Nevertheless, the statement does not appear "calculated to inflame the jury," and likely had only minimal prejudicial effect, if any.[42] Indeed, Phea gives no explanation as to how the comment prejudiced him. Phea has not shown that the statement prejudiced his substantial rights.

Phea alleges that the prosecutor improperly made a personal appeal to the jury to convict Phea on the § 1591 count by asking the jurors to "not take the easy way out" because "Count One is about that girl." The full context of the comments indicates that the prosecutor was responding to an earlier argument by Phea's counsel that Phea was guilty of aiding and abetting the promotion of prostitution (Count Two) but that he did not force or coerce K.R. to engage in prostitution. The remarks challenged by Phea were immediately followed by statements that the evidence supported a conclusion that K.R. had been forced by Phea to have sex for money. This was not a personal appeal to

---

[42] *Cf. Turner*, 674 F.3d at 439.

the jury but rather a plea to convict based on the evidence, which is permissible.[43]

Lastly, Phea asserts that the prosecutor improperly vouched for K.R.'s credibility and evidence in comparison to Phea's testimony. The alleged vouching statements of the prosecutor consisted of arguments that: (1) Phea's vulgar attitude toward the mother of Phea's children suggested that K.R. was therefore likely telling the truth about Phea beating and tasing her; (2) the statement "Come work for me. Come make moves. Let's get some cash together" clearly constituted recruiting and enticing; and (3) Phea's testimony suggesting that he was "stand-up" was contradicted by the evidence indicating that he was a pimp. All of these remarks "were comprised of restatements of properly admitted evidence . . . and reasonable inferences or conclusions that can be drawn from that evidence," and are therefore not improper.[44]

Additionally, any prejudice resulting from any of the challenged statements was mediated by the district court's instruction that "[s]tatements, arguments, and questions by lawyers are not evidence." Factoring in the clear evidence establishing each of the elements for conviction under § 1591(a), Phea cannot establish that the prosecutor's statements at closing argument prejudiced his substantial rights.

## V

Phea argues that he should receive a new trial. We review the denial of a motion for a new trial for abuse of discretion.[45] Because Phea's motion was

---

[43] *See United States v. Ruiz*, 987 F.2d 243, 248-49 (5th Cir. 1993) (explaining that appeals to the jury to do its duty and to act as the conscience of the community are permissible).

[44] *See United States v. Reagan*, 725 F.3d 471, 493 (5th Cir. 2013) (alteration in original) (internal quotation marks omitted).

[45] *United States v. Piazza*, 647 F.3d 559, 564 (5th Cir. 2011).

not based on newly discovered evidence, he was required to file his motion within fourteen days after the jury reached its verdict on July 10, 2012.[46]  He did not file the motion for a new trial until October 17, 2012, well after the fourteen-day deadline, and the district court denied his motion as untimely. Phea has presented no argument that his failure to timely file the motion for a new trial resulted from excusable neglect.  The district court did not abuse its discretion in determining that the motion was time-barred.[47]

## VI

Phea challenges his sentence on the ground that the district court erred in applying an enhancement for the use of a computer.[48]  We review the district court's interpretation or application of the Sentencing Guidelines de novo and its factual findings for clear error.[49]  There is no clear error if the district court's finding is plausible in light of the record as a whole.[50]

The district court applied the enhancement under United States Sentencing Guidelines Manual § 2G1.3(b)(3), which provides for a two-level enhancement to a defendant's offense level

> [i]f the offense involved the use of a computer or an interactive computer service to (A) persuade, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor.[51]

The district court found that Phea had used a computer "as a means of communication[] . . . to organize [K.R.'s] travels to Amarillo" and to advertise

---

[46] FED. R. CRIM. P. 33(b)(2).

[47] *United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014).

[48] Phea Br. at 56.

[49] *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

[50] *Id.*

[51] UNITED STATES SENTENCING GUIDELINES MANUAL § 2G1.3(b)(3).

K.R. as a prostitute on Backpage.com.  Both of these findings are plausible in light of the record and are not clearly erroneous.  Furthermore, they support a determination that Phea used a computer to facilitate the travel of K.R. to engage in prohibited sexual conduct, thereby satisfying § 2G1.3(b)(3)(A).

Phea asserts that because he used a computer to communicate with K.R. only for two days and none of the messages were sexual, his case is distinguishable from other cases in which defendants were deemed to have used a computer to persuade, entice, coerce, or facilitate the travel of a minor for the purpose of engaging in prohibited sexual conduct.  However, this ignores the fact that nothing in the text of § 2G1.3(b)(3)(A) requires that the communications be over a long period of time or that they be sexual in nature.[52] In any event, Phea's briefing in this court candidly admits that "[s]exual banter ensued" in the online communications between Phea and K.R. before she traveled to Amarillo.  The record supports this characterization of the communications.  Phea's argument fails.

*    *    *

For the foregoing reasons, Phea's conviction and sentence are AFFIRMED.

---

[52] *Cf. United States v. Lay*, 583 F.3d 436, 447 (6th Cir. 2009) (explaining that the "enhancement may be applied even if the defendant did not send specific sexual requests by computer").