# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20125

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

LUISA VARGAS, also known as Christina, also known as Cristi, also known as Rocio,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CR-387-2

Before KING, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant Luisa Vargas ("Vargas") appeals her conviction for engaging in child sex trafficking under 18 U.S.C. § 1591. Because there was evidence to support the conviction, we AFFIRM.

## I. Background

Vargas operated a brothel out of an apartment complex in Houston, Texas. Although it is not clear exactly how many prostitutes worked there, all

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appear to have been Hispanic and undocumented, including E.R.J., a fourteen-year-old Mexican national who testified that she came to Texas to work as a prostitute. E.R.J. explained that, as part of the arrangement, she would split her daily earnings evenly with Vargas and that Vargas charged about $100 for rent.

Vargas also employed A.L.T. Like E.R.J., A.L.T. was undocumented. A.L.T. testified that she also worked and lived at the apartment complex. She said the girls working for Vargas "were from different countries," including Honduras, Colombia, and El Salvador. When asked if any were from the United States, she replied, "I never saw any American."

Adriana Carrillo Martinez, another undocumented immigrant, testified that she was approached by Vargas to work for her, but she instead chose to work for Vargas's sister, Laura, who ran her own brothel at the same apartment complex. When asked about the girls working for Vargas, she testified that they were from Mexico, Honduras, and El Salvador. She also stated that the majority of the girls were not lawfully present in the United States.

Lleyton Rengifo Orozco, a Colombian national, also testified. He marketed the business and provided security. Like every other Vargas employee to testify, Orozco came to Houston as an undocumented immigrant through Mexico. After discerning that some of the girls were underage, Orozco called a hotline and informed law enforcement.

The only other witness who testified was Houston Police Department Officer Antonio Gracia. He was part of the team that raided the apartment complex as a result of Orozco's tip that underage prostitutes were employed there.

No. 16-20125

The Government indicted Vargas on charges of conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c) ("Count 1"), one count of sex trafficking A.L.T. in violation of § 1591(a)(1), (a)(2) and (b)(2) ("Count 2"), one count of sex trafficking E.R.J. in violation of § 1591(a)(1), (a)(2) and (b)(2) ("Count 3"), and one count of harboring undocumented aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i) ("Count 4").

After a bench trial, the district court acquitted Vargas of the conspiracy (Count 1) and of the count of sex trafficking A.L.T (Count 2), but the court convicted Vargas of the counts of sex trafficking E.R.J. (Count 3) and harboring undocumented aliens (Count 4). In deciding the case, the district court found that Vargas "knew she was dealing with people who were illegal immigrants."

In response to the court's decision, Vargas questioned whether the Government adduced evidence of interstate or foreign commerce. The district court replied that "in a perfect world, you would be right . . . [But] I am constrained to say that . . . they're in interstate commerce since they're foreigners coming here for business." Vargas timely filed a notice of appeal.

## II. Standard of Review

We review a district court's finding of guilt after a bench trial to determine whether it is supported by "any substantial evidence." *United States v. Shelton*, 325 F.3d 553, 557 (5th Cir. 2003) (quoting *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1381 (5th Cir. 1992)). Because there was a bench trial, this standard applies regardless of whether there was a formal motion for a judgment of acquittal at the close of the evidence. *See Rosas-Fuentes*, 970 F.2d at 1381; *Hall v. United States*, 286 F.2d 676, 677 (5th Cir. 1960) (holding that there is no need for a formal motion for a judgment of acquittal in a bench trial because the "plea of not guilty asks the court for a judgment of acquittal").

3

No. 16-20125

"Evidence is sufficient to sustain a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *Shelton*, 325 F.3d at 557. We review the evidence in the light most favorable to the verdict without ourselves making credibility choices or weighing the evidence. *Rosas–Fuentes*, 970 F.2d at 1381 (quoting *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984)). The district court's legal conclusions, however, are reviewed de novo. *Shelton*, 325 F.3d at 557.

"The commerce clause nexus element in [a] statute is not 'jurisdictional' in the sense that a failure of proof would divest the federal courts of adjudicatory power over [a] case." *United States v. Moreland*, 665 F.3d 137, 144 n.3 (5th Cir. 2011). Rather, the interstate commerce nexus element "is 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime . . . under the statute." *United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir. 2008) (quoting *United States v. Martin*, 147 F.3d 529, 531–32 (7th Cir. 1998)). Accordingly, Vargas's challenge to the interstate commerce element of § 1591 is simply a challenge to the sufficiency of the evidence supporting that element. *Id.* at 243 n.4.

## III. Discussion

Vargas argues that the evidence presented at trial is insufficient to convict her of Count 3, sex trafficking of a minor. Specifically, she contends that there is no evidence of the interstate commerce nexus, i.e., that her actions were "in or affecting interstate or foreign commerce," as the statute requires. 18 U.S.C. § 1591(a)(1). Vargas argues that, unlike in similar prosecutions, the Government did not put forth evidence that she used interstate hotel chains or telephone communication, or that she purchased condoms or clothing from out-of-state manufacturers. *See United States v. Phea*, 755 F.3d 255, 263 (5th Cir. 2014); *United States v. Anderson*, 560 F.3d 275, 280 (5th Cir. 2009); *United*

No. 16-20125

*States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014); *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007). Citing *Phea*, Vargas also contends that we have previously held that any evidence about a victim's origin is irrelevant to the question of whether the defendant's actions occurred in or affected interstate commerce, and thus, evidence that Vargas hired E.R.J. and A.L.T., who both illegally entered the country, is irrelevant to this case. 755 F.3d at 266.

We disagree. Although the Government failed to present the specific types of evidence mentioned above, it nonetheless presented other evidence sufficient to sustain the conviction.[1] In *Phea*, the defendant challenged a jury instruction that the Government meets its interstate nexus burden if it "proves beyond a reasonable doubt that any of the acts of harboring a person . . . affected the flow of money, goods or services in interstate commerce to any degree." 755 F.3d at 264. He argued that the instruction was in error because it referred to "'harboring a person' generally, rather than specific acts of Phea harboring [the victim]." *Id.* at 266. We disagreed with the defendant's interpretation of the charge and concluded that, viewing the instruction as a whole, it was clear that it referred to his conduct. *Id.* Thus we recognized the obvious conclusion that a defendant's conduct is relevant to whether that defendant's actions affected interstate or foreign commerce. However, in

---

[1] The Government did present evidence of interstate telephone communications in Vargas's effort to recruit A.L.T., however, the district court acquitted Vargas of that count. Therefore, Vargas argues that the evidence of her recruitment of A.L.T. is irrelevant and inadmissible for the purpose of showing that Vargas's sex trafficking of E.R.J. affected interstate or foreign commerce. *See* FED. R. EVID. 402, 403. Because we conclude that other evidence is sufficient to support the interstate/foreign commerce nexus, we need not address this argument.

making this conclusion, we did not hold, as Vargas contends, that a victim's movement in foreign commerce is irrelevant to the interstate nexus analysis.[2]

Here, as the district court found, it was clear that Vargas "knew she was dealing with people who were illegal immigrants." In fact, the Government put forth evidence that almost all of the people involved in Vargas's prostitution business were undocumented. In addition, all of the witnesses to testify, besides Officer Gracia, were or had been undocumented immigrants when they began working for Vargas. Such evidence is proof sufficient to support a finding that Vargas's "business" model was to employ primarily undocumented Hispanic immigrants. Arguably, the above evidence alone is sufficient evidence of a foreign commerce nexus.

However, we need not decide that issue because the Government presented undisputed evidence showing that Vargas rented a Houston, Texas apartment to house her prostitution business. Further, E.R.J. paid Vargas rent to live and work as a prostitute in the apartment. The Supreme Court has held that the rental of real estate is "unquestionably" an activity that affects interstate commerce, as "the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." *Russell v. United States*, 471 U.S. 858, 862 (1985). In *Russell*, the Court held that an apartment building being rented to tenants constituted property "used in an activity affecting interstate commerce," within the meaning of 18 U.S.C.

---

[2] *Cf. United States v. Thomas*, 159 F.3d 296, 297 (7th Cir. 1998) (finding that the Government sufficiently proved an interstate nexus under the Hobbs act by pointing to evidence that the cocaine an informant had planned to sell to defendants was from South America); *United States v. Chesney*, 86 F.3d 564, 570 (6th Cir. 1996) (holding that the defendant's stipulation that the gun had moved in interstate commerce was sufficient evidence to support his conviction under 18 U.S.C. § 922(g)(1)).

No. 16-20125

§ 844(i), which prohibits damaging such property by means of a fire or explosion. *Id.* Citing *Russell*, we have stated that "[t]he Supreme Court has unequivocally held that renting property implicates interstate commerce." *United States v. Meshack*, 225 F.3d 556, 573 (5th Cir. 2000), *amended on reh'g in part,* 244 F.3d 367 (5th Cir. 2001), *overruled on other grounds*, *United States v. Cotton*, 535 U.S. 625 (2002). Indeed we have recently applied *Russell* to uphold a district court's finding that an obstruction of an apartment renovation projected necessarily affected interstate commerce. *United States v. Bolar*, 483 F. App'x 876, 882 (5th Cir. 2012).[3]

We conclude, therefore, that the Government presented sufficient evidence of the interstate/foreign commerce nexus.

AFFIRMED.

---

[3] Although *Bolar* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).