# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2565

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Bruce Anthony Myers, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 9, 2007
Filed: April 13, 2007

_____

Before WOLLMAN, BEAM, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Bruce Anthony Myers pled guilty to one count of interstate transportation of a minor with the intent to engage in criminal sexual activity, a violation of 18 U.S.C. § 2423(a). The district court[1] sentenced Myers to eighty-two months' imprisonment and fifteen years of supervised release. The government appeals from Myers's sentence, contending that the district court should have applied a vulnerable victim sentencing enhancement under United States Sentencing Guidelines (U.S.S.G.) §

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

3A1.1(b)(1) (2005) and an undue influence enhancement pursuant to U.S.S.G. § 2G1.3(b)(2)(B) (2005).[2]  We affirm.

## I.

The following facts are drawn from the presentence investigation report (PSR) and the deposition of the victim (whom we refer to as Doe) and her mother, which were exhibits at the sentencing hearing.  Doe, a fifteen-year-old girl, lived with her mother and her mother's boyfriend in Iowa and, by all accounts, had an unhappy home life.[3]  In the fall of 2004, Doe engaged in online conversations with various adults, including an individual from the Gaza Strip and another man, Mohammed, from Egypt.  Doe developed a serious interest in Mohammed and threatened to run away with him.  Doe's mother spoke with Mohammed, however, and the two apparently agreed that Mohammed would wait until Doe turned eighteen, after which time Doe could go with him if she remained interested.  Although Doe's mother ordered Doe not to chat with adults online and placed parental controls on their computer that were designed to restrict Doe's internet access to age-appropriate content, these controls were easily circumvented and Doe continued chatting with adults online.  One of these adults included Myers, whom Doe met on the "Wheel of Fortune" website.  At the time, Myers was thirty-seven-years-old and lived in Kentucky.  Myers and Doe conversed online and over the telephone for about three weeks.  Doe claims to have fallen in love with Myers during this time, and the two decided that Doe would leave home and marry him.  It was eventually settled that Myers would come to Iowa to "kidnap" Doe and take her back to Kentucky.

---

[2]The 2005 Guidelines Manual was applied in this case.

[3]Doe told Myers that she had a terrible home life and that she feared her family. Doe's mother testified in her deposition that Doe was unhappy, but that  Doe's behavioral problems were "not any more abnormal than any other teenager."  (Doe's mother's dep. at 31).

On April 19, 2005, Myers, accompanied by a friend, Belinda Twining, and Twining's ten-year-old daughter, traveled by van from Kentucky to Iowa. That afternoon, Doe packed up some of her things and, in an effort to throw her mother off her trail, left a note saying that she had left with Mohammed. At around 2:30 p.m., Myers met Doe at a convenience store near Doe's home, whereupon they departed for Kentucky. Doe was told that if anyone approached them, she was to refer to Twining as "Mom." They reached Twining's trailer in Kentucky around 4:30 the following morning. Myers and Doe engaged in vaginal intercourse, anal intercourse, and oral sex that morning as well as the following evening. On April 21, 2005, law enforcement agents knocked on the door of the trailer, whereupon Doe, at Myers's and Twining's direction, hid in a closet. Myers was taken into custody and Doe was eventually found and returned to her home.

As noted above, Myers pled guilty to one count of interstate transportation of a minor with the intent to engage in sexual activity. The government sought the imposition of a vulnerable victim sentencing enhancement pursuant to § 3A1.1(b)(1) of the Guidelines and an undue influence enhancement under § 2G1.3(b)(2)(B). At the sentencing hearing, the government argued that the vulnerable victim enhancement was appropriate because Doe suffers from attention deficit/hyperactivity disorder (ADHD). The government argued that the undue influence enhancement was warranted because § 2G1.3(b)(2)(B), cmt. n. 3(B) provides that some measure of undue influence can be presumed when the defendant is at least ten years older than the victim (as was the case here). The district court declined to apply either of these enhancements.

## II.

The government contends that the district court used the wrong standard when it declined to apply the vulnerable victim enhancement. The government also argues

that the enhancement was warranted because Myers knew or should have known that Doe suffered from ADHD and had a troubled home life.

Section 3A1.1(b)(1) provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." A vulnerable victim is defined as a victim of the offense "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." § 3A1.1, cmt. n.2. If age is already incorporated into the offense guideline, however, it cannot serve as a basis for the enhancement. Id. "The district court's determination that a vulnerable victim enhancement is deserved turns on a factual finding subject to review for clear error." United States v. Moskal, 211 F.3d 1070, 1073 (8th Cir. 2000). The predicate facts supporting an enhancement must be found by a preponderance of the evidence. United States v. Hernandez-Orozco, 151 F.3d 866, 870 (8th Cir. 1998). We will assume for the sake of argument that ADHD unaccompanied by other limitations or conditions renders a victim vulnerable for purposes of § 3A1.1(b)(1).[4]

The government suggests that the district court neglected to consider whether Myers should have known that Doe suffered from ADHD and considered only whether Myers had actual knowledge of the condition. The government's argument is based on the following exchange at the sentencing hearing:

---

[4]The government asserts that the district court may have concluded that Doe was vulnerable because of ADHD because the district court found it necessary to determine Myers's knowledge of this condition. We believe it is more likely that the district court, rather than analyzing whether Doe's ADHD made her vulnerable, assumed *arguendo* that she was vulnerable and opted instead to engage in a more straightforward inquiry: whether Myers knew or should have known about the ADHD.

-4-

THE COURT: Well, how do you establish that? You have an obligation to prove that the defendant knew or should have known of the victim's vulnerability based on something other than her age.

MR. LAMMERS: Based on the unobjected-to sections in regards to the presentence report. The victim is described as having ADHD, and the specific fact sections of the report discuss the context of the contacts that the defendant had with her and the chat with her and also their contacts between here and Kentucky. And that's how we would establish that, Your Honor.

. . . .

THE COURT: Well, is there anything in the presentence report that indicates that the defendant knew about that?

MR. WICHSER: No, there isn't.

THE COURT: Well, I didn't think so.

MR. WICHSER: He didn't know about it.

THE COURT: Well, there's no evidence that the defendant knew about it, so I don't find that there's sufficient evidence in the record for the Court to find that the defendant knew that this was a vulnerable victim other than by her age, and that's already taken care of in another enhancement.[5]

(Sent Tr. at 25-26). The government argues that because the district court referred only to Myers's lack of actual knowledge when it declined to apply the enhancement, the district court neglected to consider the alternative "should have known" basis for enhancement. We disagree. Although the district court spoke of Myers's lack of actual knowledge as the reason for not applying the enhancement, the court opened the above-quoted exchange with a complete statement of the legal standard. We find

---

[5]The balance of the district court's remarks on this topic include a reference to the presentence investigation report (PSR), which also states that Myers did not know of the ADHD. It bears mention, however, that the section of the PSR addressing the parties' objections states that the vulnerable victim enhancement is inapplicable because, *inter alia*, "it is uncertain that the defendant knew or should have known [Doe] had ADHD." (PSR at 22).

it unlikely that the district court, having correctly articulated the relevant legal standard, either forgot or chose to disregard it mere seconds later (and, we observe, without comment or protest by the government). Accordingly, we conclude that the district court recognized and applied the correct legal standard and that the comments to which the government refers were either slips of the tongue or an abbreviated articulation of the dual-based standard stated in full by the district court only moments earlier.

We also reject the government's argument that Myers should have known of Doe's ADHD. There is nothing in the record that would so much as suggest, let alone demonstrate by a preponderance of the evidence, that Myers should have known about Doe's condition. The record does not indicate how the ADHD may have manifested itself in Doe's behavior. Nor does the record suggest that Doe's ADHD arose (or was likely to arise) as a topic of conversation between Myers and Doe.

The government cites United States v. Janis, 71 F.3d 308 (8th Cir. 1995), in support of its contention that Myers should have known of Doe's condition and states that the facts in Janis "are very similar" to those in this case. We disagree. The victim in Janis had an I.Q. of sixty-five, was diagnosed with fetal alcohol syndrome, had a learning disability, attended individualized educational programs, had severe attention deficit and hyperactivity disorder, and had received social security benefits because of her disability. Id. at 310-11. In this case, by contrast, Doe appears to suffer from limitations that are far less severe and, in all likelihood, far less noticeable that those suffered by Janis's victim. Moreover, Janis had "regular contact" with his victim because the victim lived with Janis's family, id. at 311, in contrast to Myers's more limited contact with Doe. Comparing this case to Janis underscores the fact that there is little reason to believe that Myers should have known about the ADHD.

The government's argument that Doe was vulnerable due to her unhappy home life is likewise unavailing. Although the government referred in its sentencing brief

to Doe's troubles at home as a basis for an enhancement, it did not present this as a basis for the vulnerable victim enhancement at the sentencing hearing itself.[6] At the hearing, the discussion pertaining to the vulnerable victim enhancement focused exclusively on Doe's ADHD. After the district court rendered its oral findings and rulings on the enhancement, the government neither mentioned the alternate ground nor asked the court to make findings and rulings on the matter. We therefore consider the issue waived. See United States v. Hester, 140 F.3d 753, 761-62 (8th Cir. 1998) (holding that although the defendant submitted various objections to the PSR, because he addressed only one of these objections during the sentencing hearing and did not ask for a ruling on the others, these latter objections were waived). Accordingly, we need not consider whether Doe's troubled home life made her a vulnerable victim.

## III.

The government contends that the district court applied the wrong standard in assessing the undue influence enhancement as well, arguing that the enhancement should have been applied because Myers presented insufficient evidence to countervail the guideline's rebuttable presumption that, due to the disparity in their ages, Myers unduly influenced Doe.

Section 2G1.3(b)(2)(B) provides for a two-level enhancement if the defendant "unduly influenced a minor to engaged in prohibited sexual conduct." The relevant application note states that "[i]n a case in which a participant is at least ten years older than the minor, there shall be a rebuttable presumption, for purposes of subsection (b)(2)(B), that such participant unduly influenced the minor to engage in prohibited sexual conduct." § 2G1.3(b). cmt. n.3. The application note also states that "[i]n

---

[6] The government did briefly refer to Doe's home life at the sentencing hearing and even mentioned that it made her a "more vulnerable victim," but did so only in the context of arguing for the undue influence enhancement.

determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." Id. "We review for clear error the district court's fact-findings related to the calculation of an advisory Guidelines sentence." United States v. Stewart, 462 F.3d 960, 963 (8th Cir. 2006).

The government suggests first that the district court applied the wrong standard because the court determined that the presumption standing alone would be legally insufficient to support a finding of undue influence and thus improperly placed the burden on the government to present evidence in addition to the presumption. This argument is based on the district court's comment that "[t]here's no other evidence in the record [of undue influence] other than the presumption." (Sent Tr. at 28). Again, we believe that the government is taking the district court's remarks out of context. Immediately prior to the district court's comment, Myers's counsel argued that Myers could not have unduly influenced Doe because Doe had already contemplated running away with another man (Mohammed) before Myers had even entered the picture. In light of this exchange, we interpret the district court as having asked the government whether there was any evidence in the record – other than the presumption – that would rebut Myers's evidence that he did not exert an undue influence over Doe. The government's contention that the district court used the wrong standard is therefore unavailing.

We also reject the government's argument that the district court clearly erred in concluding that the facts did not support an undue influence enhancement. Myers presented sufficient evidence for the district court to determine that Myers had not "compromised the voluntariness of [Doe's] behavior." § 2G1.3, cmt. n.3. The depositions indicate that Doe had already possessed some inclination to leave home before she even encountered Myers and had contemplated running away with Mohammed. Moreover, in her deposition, Doe characterized the plan for her to run away and marry Myers as "both of [their] ideas," agreed that Myers "didn't have to

do anything to convince [her] to go to Kentucky," and stated that she anticipated that she would at some point have sex with Myers. Given this evidence, the district court did not clearly err in concluding that, despite the difference in their ages, Myers did nothing that compromised Doe's volition, however misguided it may have been.

The judgment is affirmed.[7]

_____

_____

[7]Our affirmance renders moot the government's request that it be allowed to revisit on remand Myers's sentencing reduction for acceptance of responsibility.