# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2009

No. 07-20467

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GEORGE ANDERSON, III

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

PATRICK E. HIGGINBOTHAM:

George Anderson appeals his conviction and sentence for two counts of sex trafficking of children.[1]  The Government's case at trial showed that Anderson induced two minor females to work for him as prostitutes, that they gave him all the money they made, and that in return Anderson paid for the girls' hotel rooms, cell phones, clothes, and food.

## I

Anderson raises five points of error which we address in turn.

---

[1] 18 U.S.C. § 1591.

A

Anderson first argues that the phrasing of the jury instruction on the interstate commerce element of sex trafficking allowed the jury to convict without finding beyond a reasonable doubt that interstate commerce was actually affected. The interstate commerce portion of the charge used in this case, in its entirety, reads:

> The offense of sex trafficking requires that the act of harboring a person for commercial sex acts must be "in or affecting interstate commerce." I instruct you that acts and transactions which affect the flow of money in the stream of commerce to any degree, however minimal, are acts and transactions "in or affecting interstate commerce."
> The Government is not required to prove that the defendant knew that his conduct would affect interstate commerce. It is not necessary for the Government to show that the defendant actually intended or anticipated an effect on interstate commerce by his actions or that commerce was actually affected. All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect interstate commerce. If you decide that there would be any effect at all on interstate commerce, than that is enough to satisfy this element. The effect can be minimal.
> So, if the Government proves beyond a reasonable doubt that any of the acts of harboring a person who had not attained the age of eighteen years for commercial sex acts affected the flow of money, goods or services in interstate commerce to any degree, you may find that the interstate commerce requirement has been satisfied.

We review a jury instruction for abuse of discretion and ask "whether the instruction, taken as a whole, 'is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them.'"[2]

---

[2] *U.S. v. Fuchs*, 467 F.3d 889, 901 (5th Cir. 2006) (quoting *U.S. v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005)). The Government in this case casts some doubt on whether Anderson's objection to the jury charge at trial was specific to the interstate commerce portion

The principle of law at issue here is the jurisdictional hook in the sex trafficking statute. Because the statute requires that the prohibited act itself be "in or affecting interstate or foreign commerce," the Government must prove the jurisdictional nexus on a case-by-case basis, as compared with other federal statutes, similarly enacted under the commerce power, but which rely on a finding that the regulated activity substantially affects interstate commerce in the aggregate.[3]

Noting this principle of law, Anderson points to the second paragraph of the interstate commerce instruction, specifically the sentence: "It is not necessary for the Government to show that the defendant actually intended or anticipated an effect on interstate commerce by his actions or that commerce was actually affected." Anderson argues that the last clause of the sentence—"or that commerce was actually affected"—relieved the prosecution of the burden of proving that interstate commerce was actually affected by the sex trafficking in this case.

We agree that, taken out of context, the last clause of the quoted sentence would be a misstatement of the law; the interstate commerce element does require the prosecution to prove that interstate commerce was actually affected. However, our review is of the jury instruction as a whole. Viewing the charge holistically, the suspect phrase occurs in the second paragraph, which plainly discusses the scienter requirement as it relates specifically to the jurisdictional hook element. The paragraph's first sentence conveys the subject of the paragraph, stating the rule, as we have held in a variety of contexts, that no

---

of the charge. Without a proper objection, we would review for plain error. Because we find no abuse of discretion, we need not debate the sufficiency of Anderson's objection.

[3] *See* Controlled Substances Act, 21 U.S.C. § 801 *et seq.*; *Gonzales v. Raich*, 545 U.S. 1 (2005).

mens rea attaches to the interstate nexus element.[4] With this subject in mind, the second sentence then continues as explanation. The beginning of the sentence correctly states that "[i]t is not necessary for the government to show that the defendant actually intended or anticipated an affect on interstate commerce by his actions." But then appears the unhappy phrase "or that commerce was actually affected." While the stray language was best deleted, when taken in context—its location in a paragraph discussing intent—the last phrase "that commerce was actually affected" is best read as relating back to what the "defendant actually intended or anticipated." In other words, the sentence was not meant to say that the Government need not show an actual affect on commerce, but that"[i]t is not necessary for the Government to show that the defendant actually *intended or anticipated* . . . that commerce was actually affected."

Of course the effort of all is to use sentences in a jury instruction that do not require jurors to tease out the best reading. But when it happens we confront it directly. We do not assume that the jury correctly interpreted the charge's ambiguous sentence. We find no error. The instruction as a whole clarified that the Government must prove an affect on interstate commerce. The suspect sentence was contained in a paragraph whose subject was limited to intent, sandwiched between two other paragraphs reinforcing that the Government must prove at least a de minimis affect on interstate commerce. The last paragraph offered a summary—signaling this by beginning with the word "So"—which clearly reiterated that the Government must prove some degree of affect on interstate commerce. This conclusion is strengthened by

---

[4] *See U.S. v. Richards*, 204 F.3d 177, 208 (5th Cir. 2000) (no specific intent requirement as to interstate nature of wire fraud); *U.S. v. Kelly*, 569 F.2d 928, 934 (5th Cir. 1978); *U.S. v. Thrasher*, 569 F.2d 894, 895 (5th Cir. 1978).

placing the charge in the full context of the trial, with focus upon the construction given to it by counsel in their argument to the jury.

Our question is the message given to the jury. This makes it significant that the Government did not exploit the weakness in the charge in its trial argument.[5] To the contrary, in closing argument the Government emphasized to the jury the evidence that it had presented—hotel bills, cell phone bills, and clothing purchases—to prove an actual affect on interstate commerce:

> Did it have an affect on interstate commerce? Well, Mr. Anderson is paying about $50 a day for this hotel room. I suggest to you, ladies and gentlemen, he's putting money into interstate commerce. In part, we base this upon the testimony of the owner of this hotel who says, "I'm a chain. My headquarters are in Atlanta, Georgia[.]" [I]nterstate commerce.

We are persuaded that the charge as a whole and as framed by the jury arguments correctly conveyed the law—the Government had to prove Anderson's illegal activities had some degree of affect on interstate commerce.

B

Anderson next argues that his equal protection rights were violated when the testimony of an FBI special agent regarding the culture of prostitution turned racial. The relevant testimony reads:

| Government lawyer: | Okay. Are you familiar with the term "pimp rules?" |
| --- | --- |
| Agent: | Yes, I am. |
| Government lawyer: | And what does that mean to you, in this culture? |

---

[5] *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record.") (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

| | |
|---|---|
| Agent: | In this culture, there's a number of rules that the girls have to abide by. One of- |
| Government lawyer: | What are those rules, ma'am? |
| Agent: | One of the rules is that a girl is told not to look at or make eye contact with any young Black male because he might be another pimp. |
| The Court: | Well what about potential customers? How does that jibe with the - that rule? |
| Agent: | Most of the girls will not have a date with a young Black male. They will avoid that. A lot of them avoid all Black males in general. |
| The Court: | Why is that? Is there a reason for that? |
| Agent: | The reason is mainly they're afraid that that's going to be a pimp- |

Testimony from a prosecution witness stating or implying that persons of the same race as the defendant are more likely to commit certain crimes is impermissible, both on constitutional grounds[6] and because its probative value is outweighed by its danger of unfair prejudice.[7] The Government contends that the FBI agent's testimony was elicited for the innocuous purpose of explaining the behavior of prostitution victims. The testimony turned racial, however, the impetus behind this particular line of questioning being that all pimps are black males, or at least this may well have been the implication to a reasonable juror. The testimony should have been excluded.

---

[6] *See McCleskey v. Kemp*, 481 U.S. 279, 310 n.30 (1987) ("The Constitution prohibits racially biased prosecutorial arguments.").

[7] *See* FED. R. EVID. 403; *U.S. v. Vue*, 13 F.3d 1206, 1213 (8th Cir. 1994).

We conclude, however, that the error was harmless. Because the error implicated Anderson's constitutional rights we "must be able to declare a belief that it was harmless beyond a reasonable doubt."[8] The impermissible testimony was limited to a few moments from a single witness that occurred in the course of a five day trial, the testimony was not mentioned again, and the Government did not allude to the testimony in its closing argument. The Government's admissible evidence against Anderson, on the other hand, was overwhelming. Former prostitutes testified regarding Anderson's activity as a pimp. Physical evidence, including hotel bills and cell phones, was introduced. And a police officer testified that when he pulled Anderson over for a traffic violation and asked him what his occupation was, Anderson replied that he was a pimp.

### C

Anderson also contends that the district court abused its discretion by admitting the expert testimony of a Government witness who testified to the typical characteristics of adolescent prostitutes and to the behavior of pimps. Anderson argues that the expert, Frank Quattrochi, was not qualified to testify as an expert and that his testimony was not relevant.

Mr. Quattrochi was qualified as an expert based on his experience.[9] He is the director of a center that provides services for runaways and high-risk adolescent victims and that specializes in serving victims of sexual exploitation. The position provided Mr. Quattrochi unique experience on which to base his testimony.

---

[8] *Chapman v. Cal.*, 386 U.S. 18, 24 (1967).

[9] *See* FED. R. EVID. 702 (" . . . a witness qualified as an expert by knowledge, skill, *experience*, training, or education, may testify . . .") (emphasis added).

The testimony was also relevant. In *U.S. v. Anderson*,[10] the D.C. Circuit, reviewing a conviction for interstate transportation of minors for prostitution, held that a sociologist's expert testimony on "pimping patterns and the pimp-prostitute relationship" was relevant because it "might have shed light on critical issues in the case—for example, whether the appellant was in fact a pimp or rather, as [appellant] claims, merely a gambler with a flashy lifestyle and a penchant for travel; and whether the government's young witnesses traveled with him quite independently, or as part of a pimp-prostitute relationship." Additionally, the court also found the testimony, "could have helped the jury to determine the credibility of the government's prostitute-witnesses, which counsel for appellant had sought to undermine on cross-examination by pointing out the inconsistencies in the witnesses' testimonies, and by intimating that they would not have remained with [appellant] if he had mistreated them as they claimed."[11] The issues in this case are nearly identical. Mr. Quattrochi's testimony was both reliable and relevant; the district court did not abuse its discretion in allowing it.

D

Anderson next argues that the district court erred in granting a motion to quash the subpoena for Judge Mark Atkinson. In preparation for trial, Anderson subpoenaed Harris County Criminal Court Judge Mark Atkinson. Judge Atkinson, in an unrelated case, had accepted a plea on a failure to identify charge from one of the girls that allegedly worked for Anderson. Anderson sought to elicit Judge Atkinson's testimony that he did not suspect the girl was a juvenile when he accepted her plea. Anderson argues such testimony would

---

[10] 851 F.2d 384, 392–93 (D.C. Cir. 1988).

[11] *Id.* at 393.

have been material to his defense that he did not know the girl was a minor. Judge Atkinson filed a motion to quash, which the district court granted.

A district court has broad discretion to grant or deny a request for a subpoena and may consider factors including materiality, relevancy, and competency.[12] This case also implicates the "mental process rule." This rule protects the mental process of government agents and judges from compelled testimony; "such an examination of a judge would be destructive of judicial responsibility."[13] This Court has explained, quoting a Virginia district court:

> While a judge enjoys no special privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony. Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning.[14]

In light of this rule, the district court did not abuse its discretion in granting the motion to quash the subpoena. The testimony that Anderson sought related to Judge Atkinson's acceptance of a plea from a girl he did not suspect to be a minor—a point that Judge Atkinson need not defend on collateral attack in an unrelated proceeding. It is true that the testimony would have been material to Anderson's defense that he did not know the girl's age. However, there was already ample evidence that Anderson did know the girl was under eighteen. The girl herself testified that Anderson did not believe her when she

---

[12] *See U.S. v. Masat*, 948 F.2d 923, 933 (5th Cir. 1991); *U.S. v. Johnson*, 495 F.2d 1097, 1102 (5th Cir. 1974).

[13] *Gary v. L.A.*, 861 F.2d 1366, 1368 (5th Cir. 1988) (quoting *U.S. v. Morgan*, 313 U.S. 409, 422 (1941)).

[14] *Gary*, 861 F.2d at 1369 (quoting *U.S. v. Dowdy*, 440 F. Supp. 894, 896 (W.D. Va. 1977)) (citations omitted).

told him she was eighteen. Mr. Quattrochi, a government expert witness, testified that adolescent prostitutes frequently lie about their age. And, the girl's mother and friend both testified that they told Anderson of the girl's true age and that she had to return to high school. Moreover, Anderson could have refuted this evidence in a number of ways without subpoenaing Judge Atkinson, for example, by adducing testimony from others that thought the girl was older than she was. Quashing the subpoena was not an abuse of discretion.

E

Lastly, Anderson challenges his sentence. The district court sentenced Anderson to 262 months imprisonment and lifetime supervised release. Because Anderson raised his objections to the sentence at the district court, we review the sentence for abuse of discretion.[15]

Anderson first challenges the district court's application of three enhancements to his base offense level of 24. The district court applied enhancements for undue influence, for the offense involving a commercial sex act, and for obstruction of justice, which together increased Anderson's offense level to 30.[16] In order to apply an enhancement, the district court must find evidence supporting the enhancement to a preponderance of the evidence.[17] We review the district court's factual determinations for clear error.[18]

---

[15] *U.S. v. Williams*, 517 F.3d 801, 808 (5th Cir. 2008).

[16] Grouping the two counts together further raised the total offense level to 32. *See* U.S.S.G. § 3G.

[17] *Williams*, 517 F.3d at 808.

[18] *U.S. v. Gonzales*, 163 F.3d 255, 263 (5th Cir. 1998). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole." *U.S. v. Lowder*, 148 F.3d 548, 552 (5th Cir.1998) (quoting *U.S. v. Cluck*, 143 F.3d 174, 180 (5th Cir.1998)).

Regarding the undue influence enhancement,[19] Anderson contends that his victims were already engaging in prostitution before they associated with him. This, however, ignores evidence in the record that Anderson's victims were afraid to leave him. Moreover, the application note for § 2G1.3 provides for a rebuttable presumption of undue influence "[i]n a case in which a participant is at least 10 years older than the minor." The district court stated at sentencing that Anderson was 29 years old. His victims were minors, at least under 18, though evidence at trial suggested they were considerably younger. Thus, undue influence was both presumed and supported by evidence.

Anderson next challenges the enhancement for the offense involving the commission of a sex act[20] on the grounds that the underlying offense incorporated the element of commercial sex and thus the enhancement would constitute double counting. The base offense level in § 2G1.1, however, applies to a variety of crimes, some of which do not involve commercial sex acts. Thus, it is not double counting for an enhancement to apply to the crimes that do, as opposed to those that do not, involve commercial sex acts.

The final enhancement, for obstruction of justice,[21] was based on the district court's finding that Anderson communicated from jail in a letter to one of his minor victims seeking her help. The letter stated "you need to be trying to help me, to help you, to help us." This letter reasonably could be read as an attempt to influence the victim's testimony. In light of this evidence, obstruction was plausible, and thus the enhancement was not clearly erroneous.

Finally, Anderson challenges the overall reasonableness of his sentence. The district court departed from the guidelines in this case by the addition of

---

[19] U.S.S.G. § 2G1.3(b)(2)(B).

[20] § 2G1.3(b)(4).

[21] § 3C1.1.

three offense levels.[22] The guideline range for the resulting offense level of 35, given Anderson's criminal history category of III, was 210 to 262 months. Anderson was sentenced to 262 months.

The sentence was not an abuse of discretion and is supported by the factors in 18 U.S.C. § 3553(a). The district court explained at sentencing the serious nature of the offense and the harm it brought on the victims. The court expressed its concern that Anderson was likely to commit future crimes, noting that Anderson was on supervised release when he engaged in the current illegal activity. Based on the sentencing judge's unique position to understand the evidence against Anderson and given his statements supporting a departure pursuant to the sentencing statute, we find that the sentence was not an abuse of discretion.

Anderson's conviction and sentence are AFFIRMED.

---

[22] *See* § 5K2.0.