**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

TYNISHA MARIE HORNBUCKLE,
AKA My Nookie, AKA Nene, AKA
No Feelings,
       *Defendant-Appellant*.

No. 12-10541

D.C. No.
2:11-cr-00327-
MCE-1

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

TAMRELL RENA HORNBUCKLE,
       *Defendant-Appellant*.

No. 12-10615

D.C. No.
2:11-cr-00327-
MCE-2

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted
March 10, 2015—San Francisco, California

Filed April 21, 2015

Before: William A. Fletcher, Andre M. Davis[*],
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

---

## SUMMARY[**]

### Criminal Law

The panel affirmed sentences for sex trafficking of children under 18 U.S.C. § 1591.

The panel held that application of enhancement under U.S.S.G. § 2G1.3(b)(4)(A) was not double counting because "commission of a sex act or sexual contact" is not an element of a conviction under § 1591.

The panel held that the district court properly applied an enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for undue influence. The panel held that the record supports the district court's finding of undue influence for all three minors. The panel joined several other circuits in holding that where the record otherwise supports a district court's factual finding of undue influence, evidence of the minor victim's willingness is insufficient to compel reversal of the district court's finding.

---

[*] The Honorable Andre M. Davis, Senior Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Bruce Locke (argued), Moss & Locke, Sacramento, California, for Defendant-Appellant Tynisha Marie Hornbuckle.

Erin Jolene Radekin (argued), Law Office of Erin Radekin, Sacramento, California; Hayes H. Gable, III, Law Office of Hayes H. Gable, III, Sacramento, California, for Defendant-Appellant Tamrell Rena Hornbuckle.

Camil A. Skipper (argued), Assistant United States Attorney, Appellate Chief; Benjamin B. Wagner, United States Attorney; Kyle Reardon and Matthew C. Stegman, Assistant United States Attorneys, Eastern District of California, Sacramento, California, for Plaintiff-Appellee.

---

**OPINION**

CHRISTEN, Circuit Judge:

Tynisha and Tamrell Hornbuckle are sisters who each pleaded guilty to two counts of sex trafficking of children under 18 U.S.C. § 1591. They challenge their sentences in these consolidated appeals. The district court held an extensive evidentiary hearing and sentenced Tynisha to 188 months and Tamrell to 151 months in prison.[1] The sentences included enhancements under U.S.S.G. § 2G1.3(b)(4)(A), because sex acts were actually committed by the minors, and under U.S.S.G. § 2G1.3(b)(2)(B), for undue influence. The

---

[1] For clarity, we use first names to identify the Hornbuckle family members.

sisters appeal the application of both enhancements. We affirm.

## BACKGROUND

### I.  Facts

From 2008 to 2011, Tynisha and Tamrell ran a prostitution ring with the help of their siblings Latrelle and Cherrelle Hornbuckle and their mother Tammy Brown. Tynisha and Tamrell, who were then in their twenties, acted as pimps who made money off adult and child prostitutes. These appeals arise from their interactions with three underage victims: P.H., who was 13 when she started working for the Hornbuckles; A.Hi., who was approximately 15 or 16; and A.He., who was 17. Tynisha primarily managed the underage prostitutes while Tamrell managed the adults, but on occasion Tamrell also arranged "dates" for the minors. The three homeless minors who are the subject of this case all lived with the Hornbuckles at one point, and they often performed sex acts for clients at Latrelle and Cherrelle's home and in Tammy's garage.

P.H., A.Hi., and A.He. gave all of their earnings to Tynisha and Tamrell,[2] who imposed daily quotas on them. A.He. had sex with ten to fifteen clients a day. Whenever the victims said they did not want to work, Tynisha told them to "[j]ust do a few" because they had "bills to pay." The girls generally got three to four hours of sleep per day because they were "[a]lways working."

---

[2] A.He. initially split the money evenly with Tynisha, but that arrangement lasted only a few days before Tynisha said that it was "simpler" for her to take all the earnings.

Tynisha hit, beat, choked, and kicked A.Hi. and P.H. for "[a]nything and everything," such as "acting out of line" or dressing too slowly for work. P.H. in particular would get "[a]nywhere from a slap to a full-on beating" if she did not bring back enough money from a date. Tamrell also "smacked" and beat P.H. The sisters had a practice of driving to a dead-end street and having other girls hold the car doors shut while they yelled at, and "severely beat," A.Hi. and P.H. Although Tynisha never actually hit A.He., she threatened to "kill," "beat," and "punch" her. On one occasion, Tynisha chased A.He. with a steak knife, promising to "beat" and "stab" her.

On April 1, 2011, a confidential source informed the FBI that the three victims were working for the Hornbuckles as prostitutes. Two undercover FBI agents set up a date with P.H., who was arrested after she agreed to the sex acts and accepted money to perform them. Tamrell arranged the transaction for P.H. and drove her to the motel. The FBI subsequently questioned Tamrell, Cherrelle, Tynisha, and A.He. A.He. corroborated the information supplied by the confidential source. Later, an undercover agent set up a date with A.Hi. and arrested her after she accepted payment to perform a sex act.

After witnessing Tynisha, Tamrell, and Latrelle beat P.H. viciously once more, A.He. agreed to assist in the FBI's investigation. In May 2011, she wore a wire and recorded Tamrell (but not Tynisha) discussing the scope of the prostitution ring, the violence inflicted on the victims, and the FBI investigation generally. The FBI also set up a fake date for A.He., from which Tamrell pocketed the earnings.

In July 2011, Tynisha and Tamrell were indicted and arrested on thirteen counts, ten of which were for sex trafficking of children under 18 U.S.C. § 1591.[3]  They both pleaded guilty to the two counts that pertained to the sex trafficking of A.He. and A.Hi.  In exchange, the Government dropped the other charges.

## II.  Sentencing Proceedings

The Presentence Reports ("PSRs") identified advisory guidelines ranges of 151 to 188 months' imprisonment for

---

[3] 18 U.S.C. § 1591(a) provides:

Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Tamrell and 188 to 235 months' imprisonment for Tynisha.[4] These ranges included: (1) a two-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for undue influence as applied to two of the minors; and (2) a two-level enhancement under U.S.S.G. § 2G1.3(b)(4)(A) for actual commission of sex acts by all three minors. The Hornbuckles objected to the two enhancements. They argued in the district court, as they do on appeal, that applying § 2G1.2(b)(2)(B) was improper because they did not unduly influence the minors to engage in prostitution, and that applying § 2G1.3(b)(4)(A) constituted double counting.

Following the parties' arguments about the applicability of these enhancements, the court heard testimony from three witnesses: an adult prostitute who worked for the Hornbuckles, the Government's expert on prostitution culture, and A.He.

The district court ruled that the § 2G1.3(b)(2)(B) enhancement was appropriate because the Hornbuckles exerted undue influence over the minors to encourage them to engage in prostitution. Although the PSRs recommended the enhancement only for A.He. and P.H., the district court

---

[4] We deny Tynisha's motion to strike the pages of the Government's brief that recite facts detailed in the PSRs, which she claims are not part of the record. During the lengthy evidentiary hearing, the district court expressly adopted the PSRs twice and determined their findings to be correct. We have repeatedly held that such adoption is sufficient to make PSR findings part of the record. *See United States v. McClain*, 30 F.3d 1172, 1174 (9th Cir. 1994); *United States v. Rigby*, 896 F.2d 392, 394 (9th Cir. 1990).

emphasized that it found undue influence for all three victims.[5]

The court also accepted the recommendation to apply the § 2G1.3(b)(4)(A) enhancement, ruling there was no double counting. The court concluded that a conviction under 18 U.S.C. § 1591 does not require commission of a sex act because it can be based on an exchange of money in anticipation of the sex act. The court adopted the PSRs' recommendations and imposed sentences of 188 months for Tynisha and 151 months for Tamrell.

The Hornbuckles timely appealed their sentences. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"We review the district court's interpretation of the Sentencing Guidelines de novo . . . and the district court's factual findings for clear error." *United States v. Swank*, 676 F.3d 919, 921 (9th Cir. 2012) (internal quotation marks omitted). "We have previously noted an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion." *Id.* at 921–22. We need not resolve that conflict here because as in other cases, "the choice of standard . . . does not affect the outcome of this case." *See id.* at 922; *United States v. Yip*,

---

[5] The PSRs did not recommend the undue influence enhancement for A.Hi. because she submitted a statement claiming that the Hornbuckles did not influence her to engage in prostitution. But evidence admitted at the sentencing hearing established that A.Hi. was beaten by Tynisha, and that she gave her earnings to the Hornbuckles.

592 F.3d 1035, 1038 (9th Cir. 2010); *United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. 2008).

## ANALYSIS

## I. The district court properly applied U.S.S.G. § 2G1.3(b)(4)(A).

Impermissible double counting occurs when a court applies an enhancement for a necessary element of the underlying conviction. *See United States v. Smith*, 719 F.3d 1120, 1123–25 (9th Cir. 2013). The Hornbuckles argue that the district court improperly applied U.S.S.G. § 2G1.3(b)(4)(A) because a conviction for sex trafficking of minors requires that the minors actually engaged in sex acts. If that had been the case, we agree the district court would have erred by applying this enhancement. But the district court did not double count this factor, and its decision to apply the enhancement was proper under either de novo or abuse of discretion review.

U.S.S.G. § 2G1.3(b) provides for "Specific Offense Characteristics" relating to crimes of "Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor." Subsection (b)(4) provides: "If (A) the offense involved the commission of a sex act or sexual contact; *or* (B) subsection (a)(3) or (a)(4) applies and the offense involved a commercial sex act, increase by 2 levels." (Emphasis added.) Case law makes clear that "commission of a sex act or sexual contact" is not an element of a

conviction under 18 U.S.C. § 1591.    Thus, applying subsection (b)(4)(A) did not constitute double counting.[6]

In *United States v. Brooks*, two appellants challenged the sufficiency of the evidence for their sex trafficking convictions under 18 U.S.C. § 1591(a).    610 F.3d 1186, 1196–97 (9th Cir. 2010).    Even though one of the victims never actually engaged in a sex act, we held that there was sufficient evidence to support the convictions because "the men had plans for [that victim] to be caused to engage in prostitution in the future." *Id.* at 1197.    We clarified that a conviction for sex trafficking of minors under 18 U.S.C. § 1591 does not require that the victim actually commit a sex act:

> N.K. was not in fact caused to engage in prostitution.    The jury, however, could infer that N.K. did not engage in such acts simply because she still was very affected by the drugs she took in Phoenix.    Further, as we recently explained in another § 1591(a) appeal,
>
> [w]hen an act of Congress requires knowledge of a future action, it does not require knowledge in the sense of certainty as to a

---

[6] The Hornbuckles correctly point out that in 2007, the Sentencing Commission clarified that subsection (b)(4)(B) "does not apply if the defendant is convicted under 18 U.S.C. § 1591" because such a conviction "necessarily involves a commercial sex act."  But subsections (b)(4)(A) and (b)(4)(B) of this enhancement are independent provisions connected by the disjunctive "or."  The Sentencing Commission said nothing about subsection (b)(4)(A), under which the district court applied the enhancement here.

future act. *What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future coerce a prostitute to engage in prostitution.*

*United States v. Todd*, 584 F.3d 788, 792 (9th Cir. 2009). This standard is satisfied here even though N.K. did not ultimately engage in any acts of prostitution.

*Id.* at 1197 n.4 (emphasis added).

Our sister circuits agree. In *United States v. Willoughby*, the Sixth Circuit rejected the same argument the Hornbuckles make here:

Willoughby argues that his § 1591(a) conviction already took this aspect of his conduct into account, because in his view the commission of a sex act was an element of his offense. *But every circuit to have reached the issue disagrees with him.* The relevant language in § 1591(a) requires that the defendant knowingly take certain actions—recruiting, transporting, or enticing, among others—knowing that the victim "will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). And "[t]he future verb tense of the phrase 'will be caused'—which precedes 'to engage in a commercial sex act'—*indicates that a sex act does not have to occur to satisfy the elements of the child-sex-trafficking offense.* To conclude otherwise

> erases the meaning of 'will be' from the statutory text." *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013). *Willoughby's offense was complete when he acted with the requisite knowledge—when he dropped SW off at Tusin's residence, for example—and not at the moment of penetration.*

742 F.3d 229, 241 (6th Cir. 2014) (emphasis added) (citing *United States v. Jungers*, 702 F.3d 1066, 1073–74 (8th Cir. 2013); *Brooks*, 610 F.3d at 1197 n.4); *see also United States v. Anderson*, 560 F.3d 275, 283 (5th Cir. 2009) (holding that enhancement for commission of sex acts did not constitute double counting of 18 U.S.C. § 1591 conviction). Just as in *Willoughby* and *Anderson*, applying U.S.S.G. § 2G1.3(b)(4)(A) here was not double counting because "commission of a sex act or sexual contact" is not an element of the Hornbuckles' convictions for sex trafficking of children under 18 U.S.C. § 1591.

## II. The district court properly applied U.S.S.G. § 2G1.3(b)(2)(B).

### A. The record supports the district court's finding of undue influence for all three minors.

U.S.S.G. § 2G1.3(b)(2)(B) provides: "If . . . a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels." The commentary to this enhancement advises: "In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of

the minor's behavior.  The voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring."  U.S. Sentencing Guidelines Manual § 2G1.3 cmt. n.3(B) (2014).  Because the record easily supports the district court's finding of undue influence for all three minor victims, the application of this enhancement was proper under both de novo and abuse of discretion review.

The Hornbuckles argue that the district court found undue influence because minors are incapable of consenting to sex as a matter of law, and that under this faulty reasoning, the undue influence enhancement will always apply when a minor is caused to engage in prostitution.  This claim misrepresents the record.  Although the district court did make a passing analogy to statutory rape, that analogy was not the basis for the court's undue influence finding.  The district court made its finding after conducting an evidentiary hearing and carefully considering the evidence of the Hornbuckles' violence, intimidation, and control:

> I want the record to reflect that although there were pleas, there was a . . . rather extensive and detailed evidentiary hearing that this Court sat through, including the videotape that was alluded to . . . , and there were very compelling witnesses who testified during the course of that evidentiary hearing.
>
> The one thing that I will say, which will apply to both Tamrell Hornbuckle and Tynisha Hornbuckle, is that this was an extremely involved and, to a certain extent, complex organization that preyed upon not just young girls or non-adults, but extremely

young, going as far as 13 years old, and that's an extremely troubling situation. It did involve coercion. It did involve physical altercations. It involved the use of money. It involved a lot of different things that were here.

The record contains abundant evidence of undue influence. At the evidentiary hearing, both the adult prostitute and A.He. testified extensively to Tynisha's violence and anger. A.He. stated that she felt she had no options because she had nowhere to go, and that she was terrified of Tynisha. Aside from the evidence of violence, A.He. also indicated that life was "[v]ery stressful," the "whole family pressur[ed]" the minors, and not working was never an option.

There is ample evidence that Tynisha forced all three victims to work when they did not want to and controlled every aspect of the minors' lives, including time and place of work, choice of clothing, and access to money and food. The Government's expert testified that in the prostitution world, pimps maintain control by guarding access to money, shelter, food, clothing, and drugs. He also stated that although often only "one girl is the main victim of the violence, . . . the other girls see it." This is an effective method of controlling the prostitutes who witness the violence. The techniques are particularly effective for "underage girls [because] it's very difficult for these girls to get away and leave."

We further note that the record supports the finding of undue influence for both Tynisha and Tamrell. Although there is more evidence of Tynisha's violence, there is also evidence of Tamrell abusing the minors and pressuring them

to work.    However, the Sentencing Guidelines allow enhancements to apply "in the case of a jointly undertaken criminal activity . . . , [to] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."    U.S.S.G.  §  1B1.3(a)(1)(B).    Tamrell worked with Tynisha to prostitute the victims and could have reasonably foreseen Tynisha's acts of undue influence. Further, the record contains evidence that Tamrell exerted undue influence on the minors herself.  The district court therefore properly applied U.S.S.G. § 2G1.3(b)(2)(B) to her sentence.

### B. Evidence of the minors' willingness does not compel reversal of the district court's finding.

The Hornbuckles argue that the district court wrongly found undue influence because all three minors had previously engaged in prostitution voluntarily.    In the Hornbuckles' view, this history proves they did not unduly influence the victims.  We reject this argument as a matter of law and join several other circuits in holding that where the record otherwise supports a district court's factual finding of undue influence, evidence of the minor victim's willingness is insufficient to compel reversal.

Our circuit does not currently have controlling case law on the issue, but five other circuits have decided the question. These circuits have unanimously concluded that evidence of a victim's willingness is insufficient to compel a finding of no undue influence. *See United States v. Reid*, 751 F.3d 763, 768 (6th Cir. 2014) ("It makes no difference that J.H. 'was not handcuffed to a bed' or 'kidnapped off the street.'  The undue-influence enhancement 'is not limited to force, fraud, or coercion.'  It also reaches 'manipulating' and 'preying

upon' a vulnerable victim—just what we have here." (internal citations omitted)); *United States v. Watkins*, 667 F.3d 254, 265 (2d Cir. 2012) (affirming finding of undue influence, and observing "that [the victim] actively was pursuing a relationship with [the defendant] does not require a different conclusion"); *United States v. Hagen*, 641 F.3d 268, 271 (8th Cir. 2011) (holding finding not clearly erroneous, despite claim that "victim traveled freely with defendant"); *United States v. Miller*, 601 F.3d 734, 737–38 (7th Cir. 2010) (evidence of victim's willingness did not render finding of undue influence clearly erroneous); *United States v. Lay*, 583 F.3d 436, 439 (6th Cir. 2009) (holding that the finding of undue influence was not clearly erroneous, and observing that evidence of minor's willingness was "consistent with a victim who has been influenced by a sexual predator"); *Anderson*, 560 F.3d at 283 (finding of undue influence not clearly erroneous even though victims began engaging in prostitution before they met defendant because evidence showed that the victims were afraid to leave him).

The views of these other circuits are entirely consistent with our decision in *Brooks*, where we touched upon a related issue. *Brooks* involved two underage girls who ran away from a residential treatment center. 610 F.3d at 1191. They eventually met Brooks, a pimp. *Id.* at 1192. Knowing that they were minors, Brooks enlisted the girls to work for him as prostitutes. *Id.* Brooks was convicted for sex trafficking of minors under 18 U.S.C. § 1591. *Id.* at 1192–93. On appeal, Brooks challenged his sentence, arguing that the district court erred by applying the U.S.S.G. § 2G1.3(b)(2)(B) enhancement because there was evidence the girls had previously engaged in noncommercial sex. *Id.* at 1199. We rejected that argument:

> "*[T]he victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation.*" Nothing in the record suggests that the girls were inclined to engage in *commercial* sex acts before they met Brooks and Fields, and counsel's suggestion at oral argument that the girls were "giving it away" is not well taken.
>
> . . . [T]he record supports the conclusion that both Fields and Brooks unduly influenced the girls to engage in prostitution.

*Id.* (alteration and citation omitted) (first emphasis added) (quoting *United States v. Dhingra*, 371 F.3d 557, 567–68 (9th Cir. 2004)). We emphasized that there was evidence of undue influence because "the girls had no money, no job and, as runaways, nowhere to live." *Id.*

The Hornbuckles correctly argue that *Brooks* is distinguishable because "[n]either of the girls had engaged in *prostitution* before meeting Brooks." *See id.* (emphasis added). We agree that *Brooks* is not directly on point. It established that the victims' prior voluntary engagement in noncommercial sex did not preclude a finding that defendants unduly influenced them to engage in commercial sex. *Id.* Here, the question is whether the minors' prior voluntary engagement in commercial sex precluded a finding that the Hornbuckles unduly influenced them to engage in commercial sex. Our court has yet to address this question. Having considered the parties' arguments, we now hold that a minor's prior, voluntary acts of prostitution do not preclude

a finding that she or he was unduly influenced to engage in subsequent acts of prostitution. We emphasize that the finding of undue influence is a fact-based inquiry in which we accord great deference to the district court.

Here, all three victims engaged in prostitution before meeting the Hornbuckles, and some of them at least *began* working for the Hornbuckles voluntarily. But as in *Anderson*, this does not change the fact that once the victims began working for the Hornbuckles, they were forced to meet daily quotas, subjected to ongoing physical and verbal abuse, pressured to work when they did not want to, and unable to leave due to fear and lack of resources. *See* 560 F.3d at 283. The homeless victims in this case depended on the Hornbuckles for food, clothing, money, and housing. *See Brooks*, 610 F.3d at 1199 ("[T]he girls had no money, no job and, as runaways, nowhere to live."). This record supports the district court's conclusion that the Hornbuckles unduly influenced the victims to engage in prostitution.[7] The victims' previous involvement in prostitution does not overcome the record's abundant showing of undue influence,

---

[7] The Hornbuckles' reliance on *United States v. Myers*, 481 F.3d 1107 (8th Cir. 2007), is unavailing. In *Myers*, a 15-year-old victim fell in love with the 37-year-old defendant and ran away with him; the two engaged in numerous sex acts together. *Id.* at 1109. The victim testified that she engaged in the sex acts voluntarily. *Id.* at 1109, 1112. *Myers* is distinguishable because the district court found no undue influence. *Id.* at 1112. Reviewing for clear error, the Eighth Circuit affirmed the district court's factual finding because it was supported by the record. *Id. Myers* is entirely consistent with our holding. As *Lay* explains, the standard of review makes a difference: "Where evidence could be construed both for and against an argument that the minor was not influenced, the appellate court deferred to the district court's factual findings on the question." 583 F.3d at 446 (discussing *Myers*).

and it does not justify reversal under the clear error standard of review.  *See Lay*, 583 F.3d at 446.

## CONCLUSION

We AFFIRM the sentences imposed by the district court.

**AFFIRMED.**