**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

NORBERTO QUINTERO-LEYVA,
*Defendant-Appellant.*

No. 14-50509

D.C. No.
3:14-CR-01821-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted February 1, 2016
Pasadena, California

Filed May 17, 2016

Before: Dorothy W. Nelson, Consuelo M. Callahan,
and N. Randy Smith, Circuit Judges.

Opinion by Judge D.W. Nelson

**SUMMARY**[*]

## Criminal Law

Reversing the district court and remanding for resentencing in a case in which the defendant pleaded guilty to importation of methamphetamine, the panel held that a November 2015 amendment to the commentary to U.S.S.G. § 3B1.2 (minor role) applies retroactively in direct appeals.

The panel observed that Amendment 794 resolves a circuit split and was intended as a clarifying amendment. Because the record is unclear as to whether the district court considered all the factors now listed in § 3B1.2, which the Amendment makes clear should all be considered, the panel remanded for resentencing with the benefit of the newly amended guideline.

**COUNSEL**

Devin Burstein (argued) and Jeremy Warren, Warren & Burstein, San Diego, California, for Defendant-Appellant.

Daniel Zipp (argued) and Christopher M. Alexander, Assistant United States Attorneys, Laura E. Duffy, United States Attorney, Peter Ko, Assistant United States Attorney Chief, Appellate Section Criminal Division, United States Department of Justice, San Diego, California, for Plaintiff-Appellee.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Norberto Quintero-Leyva appeals the district court's denial of a minor role reduction at sentencing pursuant to U.S.S.G. § 3B1.2(b) after pleading guilty to importation of methamphetamine, in violation of 21 U.S.C. §§ 952 and 960. On November 1, 2015, approximately one year after Quintero-Leyva was sentenced, the United States Sentencing Commission issued Amendment 794 (the Amendment), which amended the commentary to U.S.S.G. § 3B1.2. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we hold that the Amendment applies retroactively in direct appeals.[1] We reverse and remand with directions that the district court re-sentence Quintero-Leyva under the newly amended § 3B1.2.

## I.  Background

On May 31, 2014, eighteen-year-old Quintero-Leyva attempted to enter the United States from Mexico at the port of entry at Tecate, California as the sole occupant and driver of a Ford Focus. When border patrol officers noticed Quintero-Leyva's nervous appearance, they referred him to secondary screening for further investigation. A canine alerted to the vehicle, and officers subsequently found 13.26 kilograms of methamphetamine worth approximately

---

[1] This appeal did not present the issue of whether, under the Amendment, a defendant who has exhausted his direct appeal can move to reopen sentencing proceedings. We, therefore, decline to reach this issue.

$265,200 hidden in the gas tank.    Quintero-Leyva was arrested.

When interviewed by authorities, Quintero-Leyva stated that prior to his arrest, he had been approached by an individual who offered him work transporting narcotics. Later that same day, the individual contacted Quintero-Leyva and told him to wait for a phone call for further instructions. After waiting a few days without receiving any contact, Quintero-Leyva re-contacted the individual. Quintero-Leyva was then given instructions and a promise that he would be paid $100,000. Quintero-Leyva also told authorities that he did not purchase or register the vehicle, was not present when the narcotics were loaded into the vehicle, and did not know where the narcotics were concealed in his vehicle. He said he believed the narcotic he was transporting was marijuana, not methamphetamine. He further told authorities that he did not know where he was supposed to drop off the vehicle after crossing into the United States, and was only told that someone would contact him later with instructions. This was Quintero-Leyva's first attempt at transporting narcotics and he has no prior convictions.

Quintero-Leyva entered a fast-track plea agreement with the Government. The Government recommended a 108-month sentence based on an adjusted offense level of 31 under the Sentencing Guidelines.    The Presentence Investigation Report (PSR) calculated an adjusted offense level of 35. After applying the fast-track departure, the PSR calculated the final offense level at 31.    The PSR then recommended a downward variance to 60 months. Neither the Government nor the PSR recommended a minor role reduction, which grants a two point reduction to defendants who are found to be "substantially less culpable than the

average participant in the criminal activity." U.S.S.G. § 3B1.2, comment. n.3 (A). In Quintero-Leyva's case, a minor role reduction would have triggered further reductions.

At sentencing, Quintero-Leyva argued that he should be granted a minor role reduction, highlighting to the district court his youth and naïveté, his limited role in the scheme, and his lack of prior criminal history. The court noted these factors, but nonetheless denied a minor role reduction. In so doing, the court emphasized the amount of drugs Quintero-Leyva carried, the monetary incentive Quintero-Leyva had, and the fact that Quintero-Leyva re-initiated contact with the individual who set up the criminal scheme. The court calculated Quintero-Leyva's adjusted offense level at 31 with a range of 108–135 months incarceration. The court then granted a 36-month downward variance, sentencing Quintero-Leyva to 72 months' incarceration and five years' supervised release.

On November 1, 2015, approximately one year after Quintero-Leyva was sentenced, the United States Sentencing Commission passed Amendment 794. The Commission did so because, after conducting an independent review, it found that minor role reductions were being "applied inconsistently and more sparingly than the Commission intended." U.S.S.G. App. C. Amend. 794. Specifically, "[i]n drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions." *Id.*[2]

---

[2] The Commission noted that within the "southwest border" of the nation, some district courts grant reductions only in "a low of . . . 14.3 percent of [cases with] couriers and mules . . . compared to a high of 97.2 percent in another." U.S.S.G. App. C. Amend. 794.

## II. Standard of Review

We review the district court's interpretation of the Sentencing Guidelines de novo and the district court's factual findings for clear error. *United States v. Hornbuckle*, 784 F.3d 549, 553 (9th Cir. 2015). We have previously noted an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion. *Id.* We need not resolve that conflict here because "the choice of standard . . . does not affect the outcome of this case." *Id.* (internal quotation marks omitted).

## III.    Analysis

We first address whether the Amendment applies retroactively to direct appeals. We consider three factors when assessing whether an amendment to the Guidelines applies retroactively: (1) whether the amendment is listed as a retroactive amendment in U.S.S.G. § 1B1.10(c); (2) whether the amendment is characterized as a clarification; and (3) whether the amendment resolves a circuit split. *United States v. Christensen*, 598 F.3d 1201, 1205 (9th. Cir. 2010) (citing *United States v. Morgan*, 376 F.3d 1002, 1011 (9th Cir. 2004)). The Government concedes that the Amendment applies retroactively, and we agree.

First, the Amendment resolves a circuit split. The Commission specified that the Amendment "addresses a circuit conflict and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." U.S.S.G. App. C. Amend. 794. Before the Commission passed the Amendment, different circuits had different methods of assessing whether a defendant was "substantially less culpable than the average participant."

Some courts assessed a defendant against a hypothetical average participant. *See, e.g.*, *United States v. Teeter*, 257 F.3d 14, 30–31 (1st Cir. 2001) (writing that a defendant must demonstrate that he is both less culpable than most other participants in his crime and "also less culpable than the majority of those within the universe of persons participating in similar crimes"). In this circuit and in the Seventh Circuit, however, the relevant comparison was between the Defendant and other actual participants in the crime. *See* U.S.S.G. App. C. Amend. 794; *United States v. Rojas-Millan*, 234 F.3d 464, 473 (9th Cir. 2000); *United States v. Davis*, 938 F.2d 744, 747 (7th Cir. 1991). The Amendment generally adopted the approach of this Court and the Seventh Circuit, stating that when a district court conducts an assessment of whether a defendant should receive a role reduction, "the defendant is to be compared with the other participants" in the crime, not with a hypothetical average participant. U.S.S.G. App. C. Amend. 794. The Commission explained that "[f]ocusing the court's attention on the individual defendant and the other participants is more consistent with the other provisions of Chapter Three, Part B." *Id.*

Second, the language of the Amendment indicates that the Commission intended it to be a clarifying amendment. The Amendment changed language that "may have had the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." *Id.* Newly amended § 3B1.2 now states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered" for the reduction, and "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." *Id.* The Amendment also included a non-

exhaustive list of factors a court "should consider" in determining whether to apply a minor role reduction. *Id.* The factors are:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, comment., n.1(c).

We conclude that the Amendment resolved a circuit split, and was intended as a clarifying amendment. We therefore hold that it applies retroactively to direct appeals.

We now turn to the Amendment's application in the instant case. While the district court considered many factors when determining whether Quintero-Leyva should be granted a minor role reduction, we cannot determine from the record whether or not the court considered all the factors now listed in § 3B1.2. The Amendment makes clear that a district court should consider all of the factors set forth in the Amendment.

Once the court has considered all the factors, however, it may grant or deny a reduction even if some of the factors weigh toward the opposite result. A district court, therefore, may grant a minor role reduction even if some of the factors weigh against doing so, and it may deny a minor role reduction even if some of the factors weigh in favor of granting a reduction. And because the factors set forth in the Amendment are non-exhaustive, a district court may also consider other reasons for granting or denying a minor role reduction. Because the record is unclear as to whether the court considered all the factors, we reverse and remand for the district court to sentence Quintero-Leyva with the benefit of newly amended § 3B1.2.

## IV.    Conclusion

Amendment 794 applies retroactively in direct appeals. We reverse and remand for re-sentencing so the district court can consider the factors now listed in amended § 3B1.2. On remand, the district court "should consider" the factors identified in Amendment 794: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.

**REVERSED and REMANDED.**